875 P.2d 824

The STATE of Arizona, ex rel. Terence C. HANCE, Coconino County Attorney, Petitioner,

v.

ARIZONA BOARD OF PARDONS AND PAROLES, Respondent,

Eric M. MAGEARY, Doc. # 33417, Real Party in Interest.

No. 1 CA–SA 93–0181.

Court of Appeals of Arizona, Division 1, Department A.

Oct. 26, 1993.

Review Denied July 6, 1994.

Terence C. Hance, Coconino County Atty. by Fred Newton, Chief Deputy County Atty., Flagstaff, for petitioner.

Mary Jane Gregory, Asst. Atty. Gen., for respondent.

Treon, Strick, Lucia & Aguire by Scott F. Frerichs and Richard T. Treon, Phoenix, for real party in interest.

NRA Crimestrike by Linda A. Akers, Deputy Director, Phoenix, amicus curiae.

## OPINION

LANKFORD, Judge.

The State of Arizona, appearing through the Coconino County Attorney and acting on behalf of a crime victim[1], brought this special action petition requesting that we vacate an Arizona Board of Pardon and Paroles order releasing prisoner Eric Mageary to home arrest. By prior order, we accepted jurisdiction, set aside the Board's order releasing Mageary to home arrest, and directed the Board to conduct a reexamination proceeding[2] in accordance with the Arizona statutes implementing the Victims' Bill of Rights.[3] Our order stated that an opinion would follow. This is the promised opinion.

The central issue is whether the victim of Mageary's crime is entitled to have a Board of Pardons and Paroles order set aside for failure to include her participation in the release proceedings despite the victim's failure to request notification of the proceedings.

We hold today that, as a result of the state's failure to notify the victim of her rights under the Victims' Bill of Rights, the victim's failure to request notice is not dispositive and the Board's release order must be vacated.

The facts relevant to this special action begin with Mageary's rape of the victim and his subsequent conviction and sentencing in 1974 to 25 years to life in prison. From 1982, when Mageary first became eligible for parole, to 1989, the Arizona Board of Pardons and Paroles denied Mageary parole each time he became eligible. The Board granted Mageary parole in 1989 but revoked it within a year for a parole violation. The Board continued to deny Mageary parole each time he became eligible from 1989 to 1993.

On May 5, 1993 the Board held the parole hearing that is the subject of this special action. At that hearing, the Board again denied Mageary parole but did grant release to home arrest.[4]

The victim did not receive prior notice of the May 5 hearing. The Board last attempted to contact the victim in June of 1984 when it sent notice of an upcoming parole hearing to her last known address.[5] The letter was returned as undeliverable. Since 1984, neither the Board nor the County Attorney made any attempt to notify the victim of any parole hearings, including the 1993 hearing that resulted in the release order.

Shortly after the 1993 hearing, the Governor of Arizona wrote to the Board chairman requesting that the Board rescind its decision. The Governor based his request on a Board policy that permits a request for rescission based on, among other things, an allegation that the Board made its decision

---

1. "At the request of the victim, the prosecutor may assert any right to which the victim is entitled." Ariz.Rev.Stat.Ann. ("A.R.S.") § 13–4437(C) (Supp.1992).

2. A reexamination hearing is the remedy provided by A.R.S. section 13–4436(C) (Supp.1992) for violation of the victim notice provisions of the Victims' Bill of Rights.

3. The Victims' Bill of Rights is a constitutional amendment approved by Arizona voters November 6, 1990 and effective November 26, 1990. Ariz. Const. art. 2, § 2.1. Statutes implementing

the constitutional provision generally became effective January 1, 1992, except for A.R.S. section 13–4436, which was effective July 1, 1992. *See* A.R.S. § 13–4401 to –4437 (Supp.1992).

4. Home arrest is authorized by A.R.S. section 31–236.

5. This notice apparently was sent pursuant to former A.R.S. section 31–411(G), which required victim notification. *See Borchers v. Arizona Bd. of Pardons and Paroles*, 174 Ariz. 463, 851 P.2d 88 (Ct.App.1992).

on incomplete information.[6] The Governor asserted that new information—including a letter from the victim—was available and requested a Board hearing to determine if probable cause existed to rescind the Board's decision.[7]

The Board did not hold a probable cause hearing. Instead the Board chairman responded that a "threshold review" of the Governor's request revealed no new information that justified a rescission hearing.

The Coconino County Attorney also requested rescission and a probable cause hearing. His letter included a letter from the victim and asserted that the victim would appear at a probable cause hearing. In addition, the County Attorney supplied a letter from Mageary's former prison counselor arguing against his release to home arrest. The County Attorney requested a hearing to determine if the information supplied probable cause to rescind the Board's ruling. Nothing in the record reveals whether the Board responded to this request.[8]

Within hours of Mageary's scheduled release to home arrest, the Coconino County Attorney brought this petition for special action directly to this Court asking us to set aside the release order and to direct the Board to hold a reexamination hearing pursuant to both its rescission policy and the Arizona statutes implementing the Victims' Bill of Rights.

On July 7, we temporarily stayed the Board from releasing Mageary pending our resolution of the petition.[9] After oral argument we accepted jurisdiction, vacated the Board's order releasing Mageary to home arrest and directed the Board to hold a reexamination hearing.

## I.

Before reaching the merits, we considered whether we have subject matter jurisdiction to entertain this type of special action—one brought directly to this court seeking redress against a state agency.

■ Prior to a recent statutory amendment, we did not have jurisdiction over this type of special action. The Court of Appeals was created by statute. *Morrison v. Superior Court*, 10 Ariz.App. 601, 602, 461 P.2d 170, 171 (1969); Ariz. Const. art. 6 § 9. Accordingly, our jurisdiction is limited to that which our Legislature grants. *See Goodrich v. Industrial Comm'n*, 11 Ariz.App. 244, 245–46, 463 P.2d 550, 551–52 (1970). Before 1990, the Legislature limited our special action jurisdiction to Industrial Commission matters and to special actions in aid of our appellate jurisdiction. *See* former A.R.S. § 12–120.-21(A)(2)–(3).[10] This statute did not grant jurisdiction over a special action seeking extraordinary relief against a state agency or official because it is not in aid of our appellate jurisdiction. *See Goodrich*, 11 Ariz.App. at 245–46, 463 P.2d at 551–52; *Berry v. Superior Court*, 163 Ariz. 507, 508, 788 P.2d 1258, 1259 (App.1989).

In 1990, however, the Arizona Legislature expanded our special action jurisdiction. It amended section 12–120.21 by adding subsection (A)(4), which gives this court "[j]urisdic-

---

**6.** Arizona Board of Pardons and Paroles Policy 400.07(B)(3) provides the process for rescinding a Board's order: "A request for rescission may be made ... [on the] ground[ ] that the information available to the Board when the status was granted was inaccurate or incomplete."

**7.** Board Policy 400.07(F) provides: "A probable cause hearing shall be held within a reasonable time period after the request for rescission is received by the Chair."

**8.** The record also reveals that on June 9, 1993, the Director of the Arizona Department of Corrections also requested that the Board rescind its grant of home arrest to Mageary. Nothing indicates whether the Board responded to this request; it is not an issue in this special action.

**9.** Mageary petitioned the Arizona Supreme Court to vacate our interlocutory stay. The Supreme Court denied Mageary's request by order dated July 14, 1993.

**10.** Section 12–120.21 read:

The court of appeals shall have:

. . . .

2. Jurisdiction to issue writs of certiorari to review the lawfulness of awards of the industrial commission and to enter judgment affirming or setting aside the awards.

3. Jurisdiction to issue injunctions, writs of mandamus, review, prohibition, certiorari and other writs necessary and proper to the complete exercise of its appellate jurisdiction.

tion to hear and determine petitions for special actions brought pursuant to the rules of procedure for special actions, *without regard to its appellate jurisdiction.*" A.R.S. § 12–120.21(A)(4) (emphasis added). Thus, we now have special action jurisdiction in cases to which our appellate jurisdiction does not extend.[11]

Some doubt remains about whether the authors of the 1990 amendment intended to extend our jurisdiction to include a petition seeking redress against a state officer. *See generally* 1 ARIZONA APPELLATE HANDBOOK, § 7.3.2 (Jefferson L. Lankford & Paul G. Ulrich eds., 3d ed. 1992). An argument can be made that subsection (A)(4) was not intended to give us original jurisdiction in a special action against a state officer because that meaning renders redundant subsection (A)(2), which gives us original jurisdiction in special actions involving the Industrial Commission, a state agency. Although we asked the petitioner to brief the issue, it did not do so.

■ We resolve this issue by holding that subsection (A)(4) gives us jurisdiction over this special action. While we generally assume the Legislature intended a meaning other than one resulting in redundancy, *State v. Wise,* 137 Ariz. 468, 470, 671 P.2d 909, 911 (1983), the legislative intent here is clearly reflected by the broad grant of authority in subsection (A)(4). Had the Legislature intended to limit the expansion of our jurisdiction to exclude petitions against state officers, it would have done so without the sweeping language it chose. We give clear statutory language its usual meaning unless an impossible or absurd consequence results. *In re Marriage of Gray,* 144 Ariz. 89, 91, 695 P.2d 1127, 1129 (1985); *Matter of Pima County Juvenile Appeal No. 74802–2,* 164 Ariz. 25, 33, 790 P.2d 723, 731 (1990); *State v. Wagstaff,* 164 Ariz. 485, 490, 794 P.2d 118, 123 (1990). In this instance, the clear language of subsection (A)(4) grants us jurisdiction which is neither an impossible nor an absurd result. The Legislature retained subsection (A)(2)—regarding Industrial Commission special actions—because no change was needed to simply extend our jurisdiction, a change accomplished by (A)(4). Moreover, retaining subsection (A)(2) ensured that no one would infer that the amendment impaired our jurisdiction over Industrial Commission matters. We conclude that we have jurisdiction over this special action.

■ Having the authority to hear the petition, we had discretion whether to accept it. We accepted jurisdiction to construe previously uninterpreted provisions of the Victims' Bill of Rights, a matter of statewide significance, and because resolution of this case turns on questions of law, not facts. *See S.A. v. Superior Court,* 171 Ariz. 529, 530, 831 P.2d 1297, 1298 (App.1992) (accepting special action jurisdiction in case concerning Victims' Bill of Rights).

## II.

We turn to the merits. The Coconino County Attorney made two alternative arguments in requesting that we set aside the Board's order releasing Mageary to home arrest. He argued first that the Board's own policy mandates a probable cause hearing upon an allegation that the Board made its decision without complete information. Therefore, the argument continues, the Board's chairman was not authorized to summarily refuse to hold a probable cause hearing after the Governor and the County Attorney requested rescission. As a remedy, the County asked that we order the Board to hold a reexamination hearing.[12]

■ Our decision today is prompted by neither the Governor's nor the County Attorney's requests for rescission. The Governor is not a party to this special action. The petitioner is the State of Arizona, through the Coconino County Attorney, asserting the rights of the crime victim. *See* A.R.S. § 13–

11. For example, we now have jurisdiction over a special action challenging a superior court's appellate decision of a city magistrate's evidentiary ruling. *See State ex rel. McDougall v. Superior Court,* 170 Ariz. 474, 475, 826 P.2d 337, 338 (App.1991).

12. Apparently, the County Attorney equates the rescission hearing under the Board's policy number 400.07(J) with the "reexamination hearing" under A.R.S. section 13–4436(C) (Supp.1992).

4437(C) (Supp.1992). The petitioner has established no basis on which it may advance the Governor's claim. The petitioner is not entitled to relief on a claim that the Board refused the Governor's request.

Nor does our decision depend on the County Attorney's request for a rescission hearing. Nothing in the record presented to us by petitioner establishes how or whether the Board responded to the County Attorney's request. Thus neither the Governor's nor the County Attorney's request for rescission provides a basis for relief.

### III.

We turn our attention to the County Attorney's second argument that the failure to notify the victim of her constitutional rights under the Victims' Bill of Rights and, in particular, the failure to notify her of the right to appear at the release hearing, entitles her to have the Board's order set aside.

The Victims' Bill of Rights—embodied in the Arizona Constitution—and its implementing legislation give crime victims several affirmative rights, including the right "[t]o be present at and, upon request, to be informed of all criminal proceedings where the defendant has a right to be present," and the right "[t]o be heard at any proceeding involving a post-arrest release decision, a negotiated plea, and sentencing." Ariz. Const. art. 2 § 2.1(A)(3)–(4). The Victims' Bill of Rights also gives victims the right "[t]o be informed of victims' constitutional rights." *Id.*

§ 2.1(A)(12). The Legislature implemented the Victims' Bill of Rights through the Victims' Rights Implementation Act, A.R.S. sections 13–4401 to –4437 (Supp.1992). That Act assigned the obligation of informing victims of their rights to different departments of the executive branch depending on the stage of the criminal proceeding.[13] The Legislature, however, did not enact a provision specifically addressing how to inform victims of crimes of their rights when the crimes were committed prior to the effective date of the Victims' Bill of Rights.

The threshold question is whether victims of crimes committed before adoption of the Victims' Bill of Rights are entitled to such notification. The Arizona Supreme Court has specifically held that the Victims' Bill of Rights applies to cases pending before its adoption. *Knapp v. Martone*, 170 Ariz. 237, 238–39, 823 P.2d 685, 686 (1992). The supreme court also held that the victims of crimes committed before the effective date of the Victims' Bill of Rights are "victims" for purposes of that Act. 170 Ariz. at 239, 823 P.2d at 687. The Legislature also has interpreted the constitution as protecting "*all* crime victims." Laws 1991, Ch. 229, § 2 (statement of legislative intent in enacting legislation implementing constitution) (emphasis added). Although the criminal prosecution in this case concluded before Arizona adopted the Victims' Bill of Rights, Mageary was in custody and eligible for parole when the constitution was amended.[14] This Court

---

**13.** For example, as soon as feasible after detecting a crime, "the law enforcement agency that has responsibility for investigating the criminal offence shall:

1) Inform the victim of the victim's rights under the victims' bill of rights, article II § 2.1, Constitution of Arizona, any implementing legislation and court rules."
A.R.S. § 13–4405(A)–(A)(1) (Supp.1992).
The duty to inform the victim of her constitutional rights later shifts to the prosecutor: "Within seven days after the prosecutor charges a criminal offense ... and the accused is in custody or has been served a summons, the prosecutor's office shall give the victim notice of the following:
1) The victim's rights under the victims' bill of rights, article II, § 2.1, Constitution of Arizona, any implementing legislation and court rule."

A.R.S. § 13–4408(A)–(A)(1).
The prosecutor's duties continue, requiring that office to notify the victim of the conviction, acquittal or dismissal of charges, the sentence imposed, and all post-conviction review proceedings and all releases from custody. *See* A.R.S. §§ 13–4410, 4411 (Supp.1992).
The Board of Pardon and Paroles has the duty to inform victims of their right to appear at post-conviction release proceedings. *See* A.R.S. § 13–4414 (Supp.1992).

**14.** Because the Victims' Bill of Rights gives victims the right to be notified upon any release including escape, Ariz Const. art. 2, section 2.1(A)(2), A.R.S. section 13–4411(B), and to be heard at any post-conviction release proceeding, Ariz. Const. art. 2, section 2.1(A)(9), A.R.S. section 13–4414(A), the victim has rights whenever the inmate is in the custody of the Department of Corrections.

already has decided that the rights granted under the Victims' Bill of Rights apply to all release proceedings held after its effective date. *See State v. Warner,* 168 Ariz. 261, 264, 812 P.2d 1079, 1082 (App.1990). Therefore, we conclude that this victim has the rights guaranteed by the constitution and the implementing legislation.

The next question is whether this victim was entitled to be notified of the release hearing despite her failure to request such notice. Perhaps the clearest explanation of why she was entitled to notice is also the answer to the Board's argument that it need not have notified her.

■ The Board asserts that it had no duty to notify the victim of this proceeding because the victim did not request notice. The Board is correct that A.R.S. section 13–4414 requires victims to request notice before the Board is obligated to notify them of post-conviction release hearings:

*If the victim has made a request for post-conviction notice,* the board of pardons and paroles shall, at least fifteen days before the hearing, give to the victim written notice of the hearing and of the victim's right to be present and be heard at the hearing.

A.R.S. § 13–4414(B) (Supp.1992) (emphasis added). The Board is also correct that this victim never requested notice.

■ However, this victim was never informed of her right to request notice. The Victims' Bill of Rights specifically gives victims the right to be informed of their rights under that amendment: "a victim of a crime has a right ... [t]o be informed of victims' constitutional rights." Ariz. Const. art. 2, § 2.1(A)–(A)(12). Those constitutional rights include the right "[t]o be present at and, upon request, to be informed of all criminal proceedings where the defendant has the right to be present" and "[t]o be heard at any proceeding involving a post-arrest release decision...." *Id.* at § 2.1(A)(3)–(4). Thus, the victim had a constitutional right to be *informed* that she was entitled to request notice of, and to participate in, any post-conviction relief proceeding.

The state cannot now use the victim's failure to request notice as a defense against the victim's right to appear at the release proceeding because the state failed to *first* fulfill its constitutional obligation to inform her of that right. The constitutional mandate is clear: *victims must be informed of their rights.* Armed with this knowledge, victims may choose to exercise these rights. Conversely, an uninformed victim may not exercise her rights because she is unaware of them, or unaware that the right to notice of a release hearing requires that she first file a request for such a notice.

■ The Victims' Rights Implementation Act also makes clear that the victim's right to be informed imposes a corollary duty on the state to provide the information. This legislation creates specific obligations on state government to inform victims of their rights at various stages of criminal proceedings. *See* statutes cited in n. 13, *supra.* While the statutory provisions do not specifically address how the state is to inform victims of pre-Bill of Rights crimes, the overriding principle is clear: the linchpin of Ariz. Const. art. 2, § 2.1(A)(12) is the right of victims to be informed of their constitutional rights, and the state has an affirmative obligation to so inform them.

This victim was never informed of her constitutional right to request notice of and to participate in post-conviction release proceedings. It is this omission that violated her rights and rendered the release proceedings defective.

## IV.

We are also unpersuaded by the Board's argument that its efforts to notify the victim of the release hearing were adequate. Even assuming that notice of this hearing would have satisfied the mandate of Ariz. Const. art. 2, § 2.1(A)(12) that victims be informed of their "rights" in general, the Board's efforts to provide notice in this case failed to satisfy the requirements of due process.

We realize that actual notice is not always possible, and we do not suggest that the Victims' Bill of Rights insists that victims actually receive notice in every case. Never-

theless, the Arizona Constitution protects a victim's rights to "due process." Ariz. Const. art. 2, § 2.1(A). Due process in this context is not explained by the constitution or by the implementing legislation. However, due process notice requirements in general are well-established. Due process does not require actual receipt of notice:

> Notice is sufficient for due process purposes if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" or claims.

*Matter of Gila River*, 171 Ariz. 230, 236, 830 P.2d 442, 448 (1992) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 318, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950)). The *Gila River* court stated that "due process required notice by mail to all beneficiaries who could be located through reasonable efforts." *Id.*

The record lacks evidence that the Board made reasonable efforts to locate this victim. The Board[15] admitted that it had made no effort to contact the victim since it sent a letter to her last known address in 1984, a decade after the conviction. A complete lack of effort is not "reasonable efforts" to locate the victim. We do not, however, attempt to define for all future cases the precise degree and kind of efforts required. Determining what are "reasonable efforts" requires a case by case analysis. In this case we are certain that the Board's total lack of effort to contact this victim was not sufficient.

We now address the argument that the Board emphasized at oral argument. It asserted that it satisfied its obligation to notify the victim by sending notice of the upcoming hearings to the County Attorney who, in turn, could have attempted to notify the victim. It was the County Attorney's fault, the Board argued, that this victim did not receive notice.

Notifying the County Attorney of the upcoming release proceeding was not sufficient under the facts of this record. The record fails to show that either the victim or the prosecutor understood that notice to the prosecutor would constitute notice to the victim. The victim did not agree to use the prosecutor as her agent for this purpose; the prosecutor did not agree to relay the information to the victim. Moreover, the Board's file contains letters from the County Attorney showing that for many years he had been unaware of the victim's address.

We also decline to assign blame. The issue is whether the victim received that which the constitution guarantees: reasonable efforts by the state to notify her of her constitutional rights and, in particular, the right to participate in the post-conviction release process. Nor is it our responsibility, as the County Attorney requests, to assign among agencies of the executive branch the duty of notifying victims of their rights. That is an executive or legislative function. We decide today only that the constitution gives victims the right to be notified and that this victim's right to notification was violated. We would needlessly intrude upon the prerogatives of the other branches of government if we were to do more.

We turn now to the remedy for the violation. If a victim does not receive notice of a post-conviction release hearing to which she was entitled, she may have the results of that hearing set aside and have a new hearing ordered. A.R.S. section 13–4436(B) provides:

> [T]he failure to use reasonable efforts to provide notice and a right to be present or be heard pursuant to this chapter at a proceeding that involves a post-conviction release is a ground for the victim to seek to set aside the post-conviction release un-

15. The Board and the County Attorney each argued that the other was the arm of the state obligated to notify the victim of her rights. Neither the constitution nor the implementing legislation resolves this question. A.R.S. section 13–4414(B) provides that the Board must provide notice of a release hearing if the victim has requested notice. We find it unnecessary to de-

cide, and express no opinion, whether the Board or the prosecutor—or both—are bound by Ariz. Const. art. 2 § 2.1(A)(12) to notify victims of pre-Bill of Rights crimes of their rights. The fact remains that no agency of the state gave this victim notice prior to the hearing, and consequently the release hearing violated her rights.

til the victim is afforded the opportunity to be present and be heard.

Section 13–4436(C) then provides:

If the victim seeks to have a post-conviction release set aside pursuant to subsection B, the court, board of pardons and paroles or state department of corrections shall afford the victim a reexamination proceeding after the parties are given notice.

The victim, through the Coconino County Attorney, requested that the results of the hearing be set aside and a reexamination hearing be ordered. The statutes clearly provide for the relief we have granted.

In sum, this victim enjoys the rights granted under the Victims' Bill of Rights. Those rights include the right to have the state use reasonable efforts to inform her that she was constitutionally entitled to request notice of and to participate in post-conviction release proceedings. The state did not meet that obligation. Therefore, it may not use this victim's failure to request notice as an excuse for denying her participation in the hearing held on May 5. Because the victim is entitled to and did not receive the notice, she is entitled to have the release order set aside and to have a new hearing ordered under A.R.S. section 13–4436(B) and (C).

VOSS, P.J., and KLEINSCHMIDT, J., concur.