98 P.3d 624

ARIZONA–AMERICAN WATER COMPANY, an Arizona corporation, Appellant,

v.

ARIZONA CORPORATION COMMIS-SION, an agency of the State of Arizona, Appellee.

No. 1 CA–CC 03–0001.

Court of Appeals of Arizona, Division 1, Department C.

Oct. 5, 2004.

As Amended Oct. 15, 2004.

Fennemore Craig, Phoenix By Norman D. James, Theresa Dwyer, Attorneys for Appellant.

Arizona Corporation Commission Legal Division, Phoenix By Christopher C. Kempley, Timothy J. Sabo, Janet Wagner, Attorneys for Appellee.

## OPINION

SNOW, Judge.

¶ 1 Arizona–American Water Company appeals the Corporation Commission's decision imposing conditions on a proposed merger between Arizona–American's parent company and a foreign corporation. Because we

conclude that this court lacks jurisdiction over this appeal, we dismiss it.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Arizona–American is an Arizona public service corporation that provides water and wastewater services in Arizona. It is a wholly owned subsidiary of American Water Works Company, Inc., a Delaware corporation. American Water agreed upon merger terms with Thames Water Aqua Holding which is a wholly owned subsidiary of RWE AG. Both Thames Water and RWE are organized under the laws of the Federal Republic of Germany. In December 2001, Arizona–American filed an application with the Arizona Corporation Commission, seeking a declaration that the Commission's Affiliated Interests Rules, Arizona Administrative Code R14–2–801 to R14–2–806, did not apply to a proposed merger of American Water and Thames Water. Alternatively, Arizona–American sought a waiver of the rules or approval of the transaction.

¶ 3 After conducting a hearing on Arizona–American's application,[1] the Commission approved the proposed merger subject to fifteen conditions. The parties thereafter completed the merger and Arizona–American filed an application for rehearing with the Commission, objecting to the imposition of the conditions. It particularly objected to condition 15, which established a three-year moratorium on any non-emergency rate increase request by Arizona–American. The Commission denied the application. Ariz. Rev.Stat. ("A.R.S.") § 40–253(A) (2001). Arizona–American thereafter filed a timely direct appeal to this court.

## DISCUSSION

¶ 4 In its appeal Arizona–American argues that: (1) the Commission has no jurisdiction over the proposed merger; (2) the Commission's order approving the merger with conditions is neither authorized nor necessary pursuant to the law governing the Commission's proceedings; and (3) the imposition of the conditions violates the commerce clause of the United States Constitution. Alternatively, Arizona–American asks us to affirm that part of the Commission's order approving the merger but vacating the fifteen conditions placed upon the merger approval. Or at a minimum, it asks us to vacate three conditions placed on the approval of the merger: condition 3 (requiring affiliates to produce their books and records in Phoenix upon request); condition 13 (limiting the cost of debt that can be used in rate-making for a three-year period); and condition 15 (placing a three year non-emergency moratorium on rate increase requests).

■ ¶ 5 Both Arizona–American and the Commission agree that A.R.S. § 40–254.01 gives this court jurisdiction over Arizona–American's appeal from the Commission's order in this case. Despite the agreement of the parties that jurisdiction exists, we have an obligation to determine our own jurisdiction. *Musa v. Adrian*, 130 Ariz. 311, 312, 636 P.2d 89, 90 (1981).

■ ¶ 6 The Legislature has given the superior court direct jurisdiction over all appeals from Commission orders except for a single class of appeals. A.R.S. § 40–254 (2001) ("Except as provided in section 40–254.01, any party in interest . . . being dissatisfied with an order or decision of the commission, may . . . commence an action in the superior court . . . to vacate, set aside, affirm in part, reverse in part or remand with instructions to the commission such order or decision. . . ."). The single category of order that may be appealed directly to the court of appeals is "any order of the commission involving public service corporations and relating to rate making or rate design pursuant to §§ 40–243, 40–246, 40–250 and 40–251." A.R.S. § 40–254.01(A).

---

1. Among other things the Affiliated Interests Rules require the Commission to evaluate proposed mergers between public service corporations or their affiliates. A.A.C. R14–2–803(A). The rules provide that the Commission may approve the merger without conducting a hearing or it may reject the proposed merger after hearing if the Commission "determines that it would impair the financial status of the public utility, otherwise prevent it from attracting capital at fair and reasonable terms, or impair the ability of the public utility to provide safe, reasonable and adequate service." A.A.C. R14–2–803(C).

¶7 The parties thus would not normally have the right to file a direct appeal in this court asserting that the Commission lacked the jurisdiction to approve the merger, that the approval of the merger with conditions is not authorized by the Affiliated Interest Rules, that the Commission's order violates the United States Constitution, or that any of the conditions imposed by a Commission order are invalid. Such contentions would be properly raised only in an appeal brought initially in superior court.

¶8 Arizona–American, however, argues that because the conditions it challenges prevent it from seeking to raise its rate for the next three years except upon an emergency basis, the order is sufficiently related to rate-making to give it a direct right of appeal to this court under the statute. It further argues that because at least this aspect of the order relates to rate-making or rate-design, this court, pursuant to § 40–254.01(A), has jurisdiction to consider the entire order and resolve all issues raised, even though the predominant issues it raises in this appeal do not relate to rate-making or design.

¶9 As a second basis for jurisdiction, the Commission asserts that the supreme court has determined that the Commission has authority to promulgate the Affiliated Interest Rules because it has authority to regulate utility rates in Arizona. Thus, it argues, because the Affiliated Interest Rules exist only as a result of the Commission's authority to regulate rates, the Commission's exercise of authority pursuant to the Affiliated Interest Rules in this case is sufficiently related to rate-making to authorize this court to hear a direct appeal from the Commission's application of those rules. We reject both of these arguments.

### 1. The Commission's Order Does Not Relate to Rate–Making.

¶10 In interpreting the scope of the statutory authorization to appeal a Commission order directly to this court, we must construe the statute in context with its companion statutes that provide a right of appeal from all other Commission orders to the superior court. *Prudential v. Estate of Rojo–Pacheco*, 192 Ariz. 139, 148, 962 P.2d 213, 222 (App.1997) (statutes are to be read in context of related provisions). The Legislature has provided that appeals alleging that a requirement in a Commission order is unlawful should be brought in superior court, A.R.S. § 40–254(A), as should appeals from orders relating to rates, tolls, and fares. *Id.* (appeals brought from Commission orders alleging "the valuation, rate, joint rate, toll, fare, charge or finding, rule, classification or schedule, practice, demand, requirement, act or service provided in the order ... is unlawful, or that any rule, practice, act or service provided in the order is unreasonable" must be brought in superior court). By distinction, the language of A.R.S. § 40–254.01(A) does not refer to orders affecting rates, but rather to orders relating to "rate making or rate design." Thus, for a direct appeal to be brought in this court, the appeal must arise from a process in which the Commission is involved in rate-making or rate-designing. An order that will affect rates cannot, without more, be directly appealed to this court.

¶11 We first considered the scope of our direct appellate jurisdiction from Commission orders in *Arizona Public Service Co. v. Arizona Corp. Commission*, 189 Ariz. 192, 194, 939 P.2d 1345, 1347 (App.1997). In that case the Commission had adopted new rules governing competition in the electric industry. A.A.C. R14–2–1601 through R14–2–1616. The new rules required, among other things, that each utility offer an increasing minimum of competitive electrical services over time to residential and non-residential customers until all electrical services were competitive. *Id.* A number of electrical providers appealed the adoption of the rules. *Id.* They filed their appeal directly in this court, claiming jurisdiction because the rules affected rates. *Id.*

¶12 After examining the legislative history behind A.R.S. § 40–254.01 we concluded that the major concern in crafting the statute was to reduce the time and expense of appealing a rate case in superior court. Ariz. Senate Comm. on Judiciary, 40th Leg., 1st Reg. Sess. (Minutes Apr. 16, 1991 at 10). A rate case is a specific regulatory proceeding. *See* A.A.C. R14–2–103 (filing requirements and time limits for rate cases). As described by

Commission rules a "rate case" concerns a proposed change in rates by a public service corporation. A.A.C. R14–2–103.[2] In light of the statutory language and its history, we rejected the argument that a Commission order could be directly appealed to this court as related to "rate making or rate design" merely because it affected rates. *APS*, 189 Ariz. at 194, 939 P.2d at 1347. We determined that a broader interpretation of the statute "would essentially eliminate most appeals to the superior court and exceed what we believe the legislature intended." *Id.*

¶ 13 There is some language in *APS* which appears to assume that an order relating to rate-making or rate-design could only arise in a rate case. *APS*, 189 Ariz. at 194, 939 P.2d at 1347. "A.R.S. section 40–254.01 provides a limited avenue of direct appeal to this court if the order appealed from is an order in a rate case." *Id.* On appeal here, the parties correctly assert that *APS* cannot correctly be read to limit this court's direct appeal jurisdiction under A.R.S. § 40–254.01 to appeals from rate cases only. They note that the statute itself contemplates that cases related to rate-making or rate-design can arise from various proceedings before the Commission including hearings initiated by the Commission itself. *See, e.g.,* A.R.S. § 40–250(B) (Commission can, on its own initiative hold hearings related to reasonableness of rates).

¶ 14 But even though we agree with Arizona–American that *APS* should not be read so narrowly as to apply only to rate cases, that does not mean that the present order from which Arizona–American appeals relates to rate-making or design. In *APS* we characterized the process of rate-making and/or rate-design as one in which the Commission sets rates and determines "fair value of property and reasonable rates of return." *APS*, 189 Ariz. at 194, 939 P.2d at 1347. In this case, the Commission determined neither the fair value of Arizona–American's

property nor a reasonable rate of return on that property. Nor did the complained of conditions involve the approval, disapproval, or establishment of rates. The order here involved the approval of the merger agreement between Arizona–American's parent company and another corporation.

¶ 15 Arizona–American does not contend, and we do not find, that condition 3, which requires any affiliate of Arizona–American to produce its books and records in the Phoenix metropolitan area upon request by the Commission, relates to rate-making. Thus, that condition provides no justification for a direct appeal to this court.

¶ 16 As for condition 13, which limits the cost of debt to be used for setting rates in any rate proceeding brought by Arizona–American for three years after the transaction closes, we agree that such a condition might have an effect on rates. Yet, we note that this provision does not constitute rate-making, nor is the condition analytically distinguishable from condition 15 which completely bars Arizona–American from seeking a non-emergency rate increase for the same three years.

¶ 17 Arizona–American was authorized by the Commission to seek a new rate at the beginning of the merger period. The new rate was set in a rate case independent of this proceeding. While it was allowed to implement the new rate, Arizona–American, as a condition of merger approval, was not allowed to seek a non-emergency rate increase for three years after the merger occurred. This condition, while it affects Arizona–American's rate, did not relate to "rate-making or rate design" as the statute requires. Neither the proceeding nor the resulting order determined the "fair value of [Arizona–American's] property," nor did it calculate a reasonable rate of return. The condition did not prevent Arizona–American

2. In a "rate case" the Commission sets rates after determining the fair value of the Arizona property owned by the utility requesting the change. A.A.C. R14–2–103. The process may require the corporation seeking a rate increase to submit to the Commission summaries of operations, capital structure, construction expenditures, and financial position for a test year and two prior years. A.A.C. R14–2–103(B)(1)(A). The utility must also provide rate base information, an income statement for the test year, cost of capital information, comparative financial information for three years, comparative customer information for three years, income projections, and cost of service information. A.A.C. R14–2–103(B)(1).

from seeking a rate increase over the next three years unless Arizona–American's parent corporation, American Water, chose to complete the merger with Thames Water, which it did. Even then, it did not prevent Arizona–American from seeking an emergency rate increase, or the Commission from otherwise initiating such a proceeding if it found such an increase necessary. Nor did it prevent the Commission (or Arizona–American) from instituting proceedings to reduce its rate. It only prevented Arizona–American from applying for a non-emergency rate increase for a period of time.

¶ 18 Like the conditions placed on the merger approval in this case, the Electric Competition Rules in *APS* mandated a period in which electrical utilities had to phase-in competitive rates to both residential and commercial users. A.A.C. R14–2–1604. While such a mandated phase-in period might effect rates, we nonetheless determined that the affect on rates was not sufficient to constitute "rate making" and thus provide a direct right of appeal. Moreover, in *APS* the rules adopted not only mandated a phase-in of competitive services, they regulated the recovery of stranded costs, A.A.C. R14–2–1607, and even dictated that "market determined rates for [c]ompetitive [s]ervices . . . shall be deemed to be just and reasonable." A.A.C. R14–2–1611.[3] We nevertheless determined that the promulgation of new rules did not constitute a rate-making procedure and thus the order did not relate to rate-making or design. We thus found no immediate right of appeal to this court. We similarly do not find that the conditional moratorium on a rate increase for a limited period constituted rate-making here.

¶ 19 The plain language of the statute, the statutory history, and existing case law indicate that the legislature intended that only Commission orders arising from the rate-making process were directly appealable to this court. Neither the present order, nor any of the conditions it contains, constitute rate-making or rate-design. Thus, without commenting on the merits of the underlying appeal, this argument does not give us jurisdiction to hear it.

## 2. A.R.S. § 40–254.01 Does Not Grant This Court Direct Appellate Jurisdiction Over Commission Orders Applying The Affiliated Interest Rules.

■ ¶ 20 The Commission argues that the supreme court has already determined that the Commission had the power to promulgate the Affiliated Interest Rules only because the relationship between a public service corporation and its affiliates might affect the rates the affiliate would charge. As such, the Commission argues, any exercise of those rules must be sufficiently rate-related to grant a direct right of appeal to this court. We disagree.

¶ 21 In *Arizona Corp. Commission v. State ex rel. Woods,* 171 Ariz. 286, 830 P.2d 807 (1992), the Attorney General refused to certify the Affiliated Interests Rules pursuant to the Administrative Procedure Act on the grounds that the Commission did not have the power to adopt the rules. *Id.* at 289, 830 P.2d at 810. The Commission filed a special action with the Arizona Supreme Court, which accepted jurisdiction. 171 Ariz. at 288, 830 P.2d at 809. The supreme court concluded that Article 15, Section 3 of the Arizona Constitution[4] gave the Commission exclusive authority not only to set rates but also to enact rules and regulations that are "reasonably necessary for ratemaking," and that the court would defer to the Commission's determination as to what was reasonably necessary for rate-making. *Id.* at 295, 830 P.2d at 816. The Commission's argument apparent-

---

3. We subsequently ruled that A.A.C. R14–2–1611 was unconstitutional, *see Phelps Dodge Corp. v. Arizona Elec. Power Co-Op, Inc.,* 207 Ariz. 95, 108, ¶ 39, 83 P.3d 573, 586 (App.2004). We did not do so, however, until after the matter had been raised at the superior court.

4. Article 15, Section 3 of the Arizona Constitution states in pertinent part:

The corporation commission shall have full power to, and shall, prescribe just and reasonable classifications to be used and just and reasonable rates and charges to be made and collected, by public service corporations within the State for service rendered therein, and make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the State . . . .

ly is that if the Commission's power to promulgate regulations is based on what is "reasonably necessary for ratemaking," then the application of Commission rules here must be sufficiently related to "rate-making or rate design" to give any party aggrieved by a Commission order a direct right of appeal to this court.

¶ 22 However, there is a distinction between the constitutional power of the Commission to promulgate rules and the procedures by which the Legislature authorizes parties to appeal the Commission's orders in the court system. While we understand how interactions between a public service corporation and its affiliates might affect rates so that the Commission has some regulatory power over that relationship, the exercise of that authority does not in and of itself constitute "rate making or rate design" sufficient to grant a direct right of appeal to this court from Commission decisions. As already discussed, the statute at issue and the legislative history supporting it indicate that the Legislature intended most questions, including questions involving rates and requirements, to be appealed to the superior court. The Legislature granted this court direct appellate jurisdiction only over orders that actually involve some form of rate-making. This court's "jurisdiction is limited to that which our Legislature grants."[5] *State ex rel. Hance v. Arizona Bd. of Pardons & Paroles,* 178 Ariz. 591, 594, 875 P.2d 824, 827 (App.1993) (citation omitted).

5. For this reason, we also reject Arizona-American's argument that we should "exercise jurisdiction" in the interest of equity and judicial economy.

\* The Honorable William F. Garbarino, Retired, is authorized to participate in this appeal by the

¶ 23 Although the *Woods* Court may have sanctioned the Commission's decision that inquiry into transactions between utilities and their affiliates was necessary to fulfill the Commission's rate-making role, that determination does not broaden the legislative grant of authority to this court to directly review orders arising from those Rules. We, therefore, reject the Commission's argument for jurisdiction on this basis.

¶ 24 In light of this guidance, we decline to interpret the statute as conferring jurisdiction on this court over any order that affects rates. Rather, we conclude that the matter before the Commission must involve rate-making for the resulting order to be directly appealable to this court. We do not find that the order here, or any part of it, constituted rate-making or rate-design as prescribed by the statute.

## CONCLUSION

¶ 25 Having concluded that this court lacks jurisdiction, this appeal is dismissed.

CONCURRING: WILLIAM F. GARBARINO, Judge \* and JOHN C. GEMMILL, Judge.

Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI § 20 and Administrative Order No.2004–27.