461 P.2d 170

Fred MORRISON and Bettie Morrison, parents of a minor under the age of eighteen years, Petitioners,

v.

SUPERIOR COURT OF COCONINO COUNTY and the Honorable Laurance T. Wren of that Court and James P. A. McLaughlin, Chief Probation Officer, Maricopa County, Arizona, Respondents.

No. 1 CA–CIV 1206.

Court of Appeals of Arizona, Division 1.

Department B.

Nov. 24, 1969.

Marks & Marks, by Philip J. Shea, Phoenix, for petitioners.

Moise E. Berger, Maricopa County Atty., by Larry Cronin, Deputy County Atty., Phoenix, for respondents.

EUBANK, Presiding Judge.

The petitioners in this original writ proceeding have asked this court to grant extraordinary relief to review and prohibit the enforcement of an order entered in a juvenile proceeding in the Superior Court of Coconino County involving their son, a minor under the age of 18 years. This court granted a hearing on the matter, but in the course of considering the cause it became apparent that a serious question existed concerning our jurisdiction to grant, upon original application, relief by extraordinary writ in a matter which could not be brought before us by direct appeal. Our *sua sponte* investigation into this question has led us to the conclusion that this court is without jurisdiction to grant relief in such a matter. We issued an order to this effect on November 7, 1969, and we are now issuing this opinion in view of the importance of the question to the bar of this state, and in further view of the fact that prior to the creation of a second department of Division One of the Court of Appeals,

the two divisions of this court have expressed conflicting viewpoints on the subject.[1]

The order complained of by petitioners adjudicated their son a delinquent. Petitioners assert that the proceedings resulting in the order were irregular and deficient, and that the respondent judge did not have the power under A.R.S. Sec. 8–231, as amended, to place the juvenile "on probation" on condition that he submit himself to a juvenile detention home for thirteen consecutive weekends.

The courts of this state have held that there is no appeal in a juvenile proceeding. The first case so holding is Ginn v. Superior Court, 1 Ariz.App. 455, 404 P.2d 721 (1965). Referring to the Ginn case, our Supreme Court stated, in Application of Gault, 99 Ariz. 181, at 186, 407 P.2d 760, at 764 (1965):

> We agree with the scholarly opinion of our appellate tribunal and hold that there is no right of appeal from a juvenile court order, nor does the general appeal statute apply, § 12–2101 A.R.S.; * * *. We note that our Constitution gives to the superior court *exclusive original jurisdiction in all proceedings and matters affecting delinquent children*, Article 6, § 15. (Emphasis in original)

■ While the overall decision of our Supreme Court in the Gault case was overruled by the United States Supreme Court In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the determination of nonappealability continues to stand as authority on that state procedural subject. In the final Gault decision, the United States Supreme Court declined to rule upon the appellants' contention that the Arizona statutes relating to juveniles were constitutionally deficient in failing to provide an appeal. In thus disposing of the contention, the court noted that a state is not required " 'to provide appellate courts or a right to appellate review at all.' " 387 U.S. 58, 87

S.Ct. 1459–1460, 18 L.Ed.2d 563, quoting from Griffin v. Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891, 898 (1956).

This court is a court of statutory creation. Article 6, section 1 of the Arizona Constitution as adopted in 1960, A.R.S., provides that:

> Section 1. The judicial power shall be vested in an integrated judicial department consisting of a Supreme Court, such intermediate appellate courts as may be provided by law, a superior court, such courts inferior to the superior court as may be provided by law, and justice courts.

Article 6, section 9 of the present constitution provides that "The jurisdiction, powers, duties and composition of any intermediate appellate court shall be as provided by law."

The Court of Appeals was created by Chapter 102 of the Laws of 1964. That portion of the act which spells out the jurisdiction of the court is A.R.S. Sec. 12–120.21, subsec. A. As enacted in 1964, this subsection read in its entirety as follows:

> § 12–120.21.  *Jurisdiction and venue*
>
> A.  The court of appeals shall have:
>
> 1.  Original jurisdiction of habeas corpus.
>
> 2.  Appellate jurisdiction in all actions and proceedings originating in or permitted by law to be appealed from the superior court, except criminal actions involving crimes punishable by death or life imprisonment.
>
> 3.  Jurisdiction to issue writs of certiorari to review the lawfulness of awards of the industrial commission and to enter judgment affirming or setting aside the awards.
>
> 4.  *Jurisdiction to issue injunctions, writs of mandamus, review, prohibition, habeas corpus, certiorari and other writs necessary and proper to the complete exercise of its appellate jurisdiction.* (Emphasis added)

---

1.  Crouch v. Justice of Peace Court of Sixth Precinct, 7 Ariz.App. 460, 440 P.2d 1000 (Div. 1, 1968) ; Shenfield v. City Court of City of Tucson, 8 Ariz.App. 81, 443 P.2d 443 (Div. 2, 1968).

This statute was amended by Chapter 48, Sec. 6 of the Laws of 1969. The amendment deleted the "Original" habeas corpus jurisdiction and the jurisdiction to issue writs of habeas corpus set forth in what was formerly subsection 12–120.21, subsec. A(4). As amended in 1969, the entire subsection now reads:

§ 12–120.21. *Jurisdiction and venue*

A. The court of appeals shall have:

1. Appellate jurisdiction in all actions and proceedings originating in or permitted by law to be appealed from the superior court, except criminal actions involving crimes punishable by death or life imprisonment.

2. Jurisdiction to issue writs of certiorari to review the lawfulness of awards of the industrial commission and to enter judgment affirming or setting aside the awards.

3. *Jurisdiction to issue injunctions, writs of mandamus, review, prohibition, certiorari and other writs necessary and proper to the complete exercise of its appellate jurisdiction.* (Emphasis added)

The italicized subpart 12–120.21, subsec. A, par. 3 (as amended in 1969) is the one under consideration here. This statutory subpart obviously parallels subsection (4) of Article 6, section 5 of the present Arizona Constitution, adopted in 1960, which section delineates the jurisdiction of the Supreme Court. Subsection (4) has been given emphasis of italicizing in the section as set forth below:

§ 5. *Supreme Court; jurisdiction; writs; rules; habeas corpus*

Section 5. The Supreme Court shall have:

1. Original jurisdiction of habeas corpus, and quo warranto, mandamus, injunction and other extraordinary writs to state officers.

2. Original and exclusive jurisdiction to hear and determine causes between counties * * *.

3. Appellate jurisdiction in all actions and proceedings except civil and criminal actions originating in courts not of record, unless the action involves the validity of a tax, impost, assessment, toll, statute or municipal ordinance.

4. *Power to issue injunctions and writs of mandamus, review, prohibition, habeas corpus, certiorari, and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction.*

5. Power to make rules relative to all procedural matters in any court.

6. Such other jurisdiction as may be provided by law.

\* \* \*

It should particularly be noted that the words "and revisory" appear in the italicized constitutional subsection after "appellate" and before "jurisdiction" but do not appear in the statute.

A.R.S. Sec. 12–120.21, subsec. A, pars. 2 and 3, is the only statutory authority which confers upon the Court of Appeals a writ-issuing power. The Supreme and Superior Courts have been expressly granted power by the legislature to issue writs of certiorari, mandamus, and quo warranto. See A.R.S. Sections 12–2001 et seq., 12–2021 et seq., and 12–2041 et seq., respectively. The "Historical Notes" under the first two sets of these statutes, relating to certiorari and mandamus, indicate that predecessor statutes antedate the original state constitution. These statutes have not been amended since the creation of the Court of Appeals.

At a time when this Division One of the Court of Appeals consisted of only one department, it stated its view that under the terms of what is now Section 12–120.21, subsec. A, par. 3, it could not issue extraordinary writs with respect to matters not reviewable by it on appeal. Crouch v. Justice of Peace Court of Sixth Precinct, 7 Ariz.App. 460, 440 P.2d 1000 (1968). The final appeal in the misdemeanor which was the subject of the Crouch case was to the Superior Court. Although Division Two of this court had issued writs in similar matters previously without jurisdictional in-

quiry (see, e. g., Abbey v. City Court, 1968, 7 Ariz.App. 330, 439 P.2d 302), it was prompted by the Crouch decision to consider the matter on its own motion in Shenfield v. City Court of City of Tucson, 8 Ariz.App. 81, 443 P.2d 443 (1968). Division Two held in Shenfield that it could in its discretion issue a writ of certiorari to a city court, although there was no appeal past the Superior Court in the criminal matter in question,[2] because there would be the possibility of an indirect appeal available from the Superior Court decision in a special writ proceeding commenced in that court with respect to the matter pending in a sub-Superior Court. The court, referring to the closing language of what is now Section 12–120.21, subsec. A, par. 3, declined to "equate 'appellate jurisdiction' with 'direct appeal' for purposes of passing upon our jurisdiction to issue extraordinary writs." 8 Ariz.App. 85, 443 P.2d 447.

It should be noted that the rationale of Shenfield—i. e., that the potential for an indirect appeal from a special writ proceeding in the Superior Court imparts the necessary element of ultimate "appellate jurisdiction" under Section 12–120.21, subsec. A, par. 3 —is not really applicable to the juvenile case presently before us, at least without an additional twist. An essential link in the Shenfield rationale is the availability of special writ relief in the Superior Court with respect to a case pending in a sub-Superior Court. In the present juvenile case, however, the relief sought is with respect to a nonappealable order of the juvenile court, which is the Superior Court. Thus, to apply Shenfield, we would have to conceive of some extraordinary proceeding in the Superior Court by which the issues in the present case could be tested, following which an appeal could be taken to this court. At least most of the extraordi-

nary writs, however, are issuable only to an "inferior tribunal". See, e. g., A.R.S. Sec. 12–2001 (certiorari), and In re Adoption of West, 87 Ariz. 234, 237, 350 P.2d 125, 126 (1960) (prohibition). One possibility which might avoid the spectre of one arm of the unitary Superior Court issuing an extraordinary writ to another arm would be for the petitioners here to institute a habeas corpus proceeding in the Superior Court directed only to a custodial officer, but assuming such a proceeding might be proper, it would be pushing the reasoning of Shenfield to an extreme to base present jurisdiction on such a hypothetically conceivable "separate" and "collateral" proceeding. Compare Middlebrooks v. Thirteenth Judicial District Circuit Court, 323 F.2d 485 (8 Cir. 1963).

■ Turning directly to Section 12–120.-21, subsec. A, par. 3, we have considered the possibility that the legislature intended to confer upon this court original jurisdiction to issue injunctions and the four extraordinary writs specifically mentioned in the statutory subpart, *independent of the scope of our appellate jurisdiction*; and, in addition to such power, the power to issue "other writs" in matters which are within our appellate jurisdiction.

To so construe the subpart, however, would seem to violate both ordinary grammar and common sense. It would, in effect, create two classes of writs, the first being those specified by name, presumably issuable by this court in any cause to any inferior tribunal, and a second class of unspecified "other" writs issuable only when " * * * necessary and proper to the complete exercise of its appellate jurisdiction." This would effectively cut the statutory subpart in half after the word "certiorari" even though there is no comma or other punctuation after that

2. The court in Shenfield noted that the possibility of a direct appeal did exist in that case in view of the fact that the validity of a statute was challenged on constitutional grounds. See 8 Ariz.App. 83–84, 443 P.2d 445–446, noting the appellate jurisdiction of the court in such

matters conferred by virtue of A.R.S. Sections 12–2101, subsec. B, 22–375, subsec. A, Article 6, section 9 of the Arizona Constitution, and A.R.S. Section 12–120.-21, subsec. A, par. 1, as amended in 1969. No statute is challenged on constitutional grounds in the present case.

word. It seems clear, to the contrary, that by proceeding without hesitation to the words "* * * and other writs * * *", the legislature intended to add a number of unspecified writs to the arsenal of specified writs and to qualify the entire grant of jurisdiction with the modifying "* * * necessary and proper * * *" clause.

Both Crouch and Shenfield construe the statutory subpart in this manner. The fact that the legislature in the 1964 legislation creating the Court of Appeals granted the Court "Original" jurisdiction of habeas corpus, and not of other writs, seems indicative of its intent. So also, is the specific grant of power to review by certiorari industrial commission awards.[3] We have found nothing in either the title of that act or its legislative history [4] which would lead us to a different conclusion. While the author of a justifiably widely acclaimed and cited article on the writ practice in our state's appellate courts has suggested that the writ-issuing power of this court is coextensive with that of the Supreme Court,[5] the suggestion is put somewhat tentatively and does not purport to reach its conclusion on the basis of an exhaustive analysis of the matter. It is also to be noted that the article was published prior to a decision of the Supreme Court emphasizing the unique nature of its "revisory" jurisdiction, discussed below.

Again, looking only at the statute, one argument that we can conceive of in support of a grant of an independent writ-issuing power would be based upon the proposition that specified writs such as review and certiorari are writs of broad scope and application which may be employed to call up the entire record of a lower tribunal and may be used by themselves in a manner which is substantially tantamount to a plenary appeal. Such writs, it might be argued, would not logically be employed as merely incidental to an appeal, and therefore a grant of power to issue such writs ought to be construed as existing independently of "appellate jurisdiction."

But what must be borne in mind in answer to an argument along these lines is that Section 12–120.21, subsec. A, par. 3, is not to be construed as merely granting a power to issue writs which are auxiliary to a *perfected* appeal; rather, it grants a power coextensive with the *potential* right of appeal. Crouch is to this effect, and especially instructive are the cases which construe the federal "All Writs Act", 28 U.S.C.A. Section 1651. Appellate courts have an *inherent* power to issue writs which are incidental to a *perfected* appeal, such as, for example, a writ which would preserve to an appellant the fruits of an appeal if successful. See Minnesota & Ontario Paper Co. v. Molyneaux, 70 F.2d 545, at 546 (8 Cir. 1934), referring to Marbury v. Madison, 1 Cranch 137, 175, 2 L.Ed. 60, 72–73 (1803); and see, also, Garland v. Tanksley, 99 Ga.App. 201, 107 S.E.2d 866, 872 (1959) and cases cited. Under our practice, a writ of certiorari has characteristically been used to review and rule upon a matter potentially, but not

---

3. The only reference in the title of Chapter 102 of the Laws of 1964 to extraordinary writs is a clause under the heading "AN ACT" which reads:
"* * * ; PROVIDING FOR APPLICATION TO COURT OF APPEALS FOR A WRIT OF CERTIORARI TO REVIEW THE LAWFULNESS OF AWARD; * * *".

4. While it is common knowledge that the Court of Appeals was created to alleviate the burden on the Supreme Court, the burden usually referred to is that created by the heavy appeal docket, rather than

the burden of disposing of applications for extraordinary writs. Justice Bernstein, for example, writing in the Arizona Law Institute publication "Extraordinary Writs in Arizona" (1967), states at page 5: "As time goes on and the backlog becomes less pressing, I would expect the [Supreme] Court to be more and more generous in the granting of discretionary writs."

5. Robert O. Lesher, "Extraordinary Writs in the Appellate Courts of Arizona", 7 Arizona Law Review 34, at 34–36 (Fall 1965).

immediately, appealable, where the remedy by eventual appeal is in some manner inadequate. See, e. g., Phelps Dodge Corp. v. Superior Court, 7 Ariz.App. 277, 438 P.2d 424 (1968). But this use of "potential" jurisdiction is to be contrasted with the "once-removed" potential jurisdiction which is the basis of the holding in Shenfield.

It remains for us to consider whether any of the decisions of our Supreme Court demand a construction of Section 12–120.21, subsec. A, par. 3, contrary to the grammatical and historical construction that we would give it.

Early in the history of the state, the Supreme Court held that it would not review by certiorari cases involving claims under $200, because the existing constitution did not extend its appellate jurisdiction to such cases. Tyler v. District Court, 14 Ariz. 6, 123 P. 315 (1912); State ex rel. Wooster v. Sapp, 15 Ariz. 24, 135 P. 718 (1913). This result was reversed without comment on the earlier cases in Kinnison v. Superior Court, 46 Ariz. 133, 46 P.2d 1087 (1935), the court noting in Kinnison that the unavailibility of an appeal supplied one of the requisites for review by certiorari. 46 Ariz. 137, 46 P.2d 1088. But, as is noted in Crouch, the Supreme Court's review by certiorari in Kinnison and other similar cases cited in Crouch of a matter not within its appellate jurisdiction as defined in Article 6, Section 4 of the constitution as it existed at that time can be based on one or both of two grounds: (1) its then-existing and present power to issue writs necessary and proper to the complete exercise of its " * * * appellate *and revisory* jurisdiction" (emphasis added); and (2) its statutorily granted power to issue writs of certiorari, embodied in the predecessor of present Section 12–2001 et seq.

While we have searched in vain for an explanation as to precisely what is encompassed by the term "revisory jurisdiction," our Supreme Court has made it clear that the term does have a meaning which grants the high court powers which this court does not have. See State v. Court of Appeals,

101 Ariz. 166, 416 P.2d 599 (1966), wherein the term "revisory" as used in Article 6, section 5(4) of the present constitution is given emphasis by italics at 101 Ariz. 168, 416 P.2d 601. That case involved a matter in which Division Two of this court had issued a writ of habeas corpus. We think that the Supreme Court's emphasis on its unique "revisory" jurisdiction in that case and this court's lack of any similar jurisdiction necessarily qualifies statements appearing in other Supreme Court decisions involving *ordinary appeals* to the effect that the jurisdiction of both appellate courts is concurrent on those matters. See Arizona Podiatry Association v. Director of Insurance, 101 Ariz. 544, 422 P.2d 108 (1966); Industrial Commission v. Harbor Ins. Co., 101 Ariz. 578, 422 P.2d 694 (1967); J. H. Welsh & Son Contracting Co. v. State Tax Commission, 102 Ariz. 443, 432 P.2d 455 (1967).

The Supreme Court cases which give us the most pause are Rothweiler v. Superior Court, 100 Ariz. 37, 410 P.2d 479 (1966), Caruso v. Superior Court, 100 Ariz. 167, 412 P.2d 463 (1966), and Erdman v. Superior Court, 102 Ariz. 524, 433 P.2d 972 (1967). In all of these cases the Supreme Court reviewed decisions of the Court of Appeals in which applications for extraordinary relief were considered in cases which do not appear to have been directly appealable to the Court of Appeals. In Rothweiler and Caruso, the Supreme Court held that the Court of Appeals properly considered the original applications for relief, while in Erdman the Supreme Court considered the merits of the application without commenting on jurisdiction. Rothweiler refers to the "jurisdiction" of the Court of Appeals and cites Section 12–120.21 (100 Ariz. at 40, 410 P.2d at 481–482); and Caruso contains very broad language on the general subject of the propriety of granting extraordinary writs. Division Two relied upon Erdman in support of its result in the Shenfield case, along with the Supreme Court's statement in Goodman v. State, 96 Ariz. 139, 140, 393 P.2d 148, 149 (1964) to

the effect that in extraordinary writ matters, "We look to substance not to form."

We do not think that the Supreme Court intended by these cases to lay down a construction of Section 12–120.21, subsec. A, par. 3 which would give us jurisdiction to issue writs beyond the province of our direct appellate jurisdiction. While "jurisdiction" in one sense was adjudicated in Rothweiler, the jurisdictional question raised was the power to grant the particular prohibitory relief sought, not jurisdiction in the primary sense of power to entertain the application in the first place. The broad language in Caruso seems to assume that an appeal would or at least might lie from the order at issue in that case.[6] We have searched the briefs in these cases and do not find that the jurisdictional issue now before us was raised in any of them.

Given the existing statutory framework and our status as a court of purely statutory creation, we think that a matter as fundamental as primary jurisdiction should not rest on anything less than a clearly articulated basis. We, accordingly, follow Crouch and respectfully decline to follow Shenfield insofar as its language may be considered as applicable to issues which cannot eventually be brought before us on a direct appeal. See footnote 2, *supra*. The case of State ex rel. Sentinel Star Co. v. Lambeth, 192 So.2d 518 (Fla.App.1966), furnishes an interesting contrast to Shenfield in this regard.

Finally, although the law of other states in regard to the matter before us presents less than a compelling consideration, in view of the differing constitutional, statutory, and court rule *milieu* out of which the various decisions arise, we note that the result we reach here is in accord with what appears to be the widely held position. Indiana and Texas cases are cited in Crouch

and Shenfield. Besides the Florida Lambeth case, *supra*, the case of State ex rel. Townsend v. Court of Appeals, 78 N.M. 71, 428 P.2d 473 (1967), is of particular interest; also see Pfeiffer v. Hemisphere International Corp., 115 So.2d 882 (La.App. 1959); Ex parte Goodman, 43 Ala.App. 183, 185 So.2d 146 (1966); and 6, Moore's Federal Practice, Section 54.10[4], esp. pages 88 and 91, and cases cited. The point is forcefully made in Denver County Court v. Lee, 439 P.2d 737 (1968), in which the Supreme Court of Colorado struck down an attempt by a statutorily created intermediate court to issue an original extraordinary writ without statutory basis.

The court stated, at 439 P.2d 738:

The [intermediate] Superior Court is limited in its jurisdiction to that which the legislature has conferred upon it. It is the duty of this [Supreme] Court to rule strictly with regard to matters of jurisdiction of statutory courts to the end that such courts are kept within the limits of their jurisdiction. Where statutes creating courts fail to confer jurisdiction over certain matters, no intendments may be indulged in favor of such jurisdiction.

Consistent with this view, see State v. Sheppard, 2 Ariz.App. 242, 245, 407 P.2d 783, 786, cited in State v. Court of Appeals, *supra*, at 101 Ariz. 168, 416 P.2d 601.

We thus conclude that we are without power to grant the relief requested in this matter. It appears that although petitioners have a remedy by way of certiorari, see Ginn v. Superior Court, *supra*, at 1 Ariz. App. 458, 404 P.2d 724, the remedy is in the Supreme Court.

Petition denied.

JACOBSON and CAMERON, JJ., concur.

---

6. The vacated Court of Appeals' opinion in the case, however, notes the probable lack of any appeal. Caruso v. Superior Court,

2 Ariz.App. 134, 137, 406 P.2d 852, 855 (1965).