902 P.2d 830

In re the Marriage of Armando **ARVIZU,** Petitioner–Appellee,

v.

Elvira (Arvizu) **FERNANDEZ,** Respondent–Appellant.

No. 1 CA–CV 93–0379.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 29, 1995.

Armando C. Arvizu, Phoenix, petitioner-appellee in propria persona.

Elvira (Arvizu) Fernandez, Avondale, respondent-appellant in propria persona.

OPINION

WEISBERG, Judge.

In 1993, appellant Elvira Fernandez ("mother") brought contempt proceedings against appellee Armando C. Arvizu ("father") for failure to pay child support arrearages ordered pursuant to a 1971 divorce decree. At the hearing, father alleged that he was not the father of one of the children born during the marriage. The court ordered the parties and the child to submit to blood DNA tests to establish paternity. The mother filed this appeal from that order. We hold that father is barred by laches from now challenging the paternity of the child and, therefore, vacate the trial court's order.

### Facts and Procedural History

On December 11, 1970, father filed a complaint for divorce from mother. He alleged there were two children born of the marriage, including Armando Arvizu, Jr. ("Armando, Jr."). On March 26, 1971, the court

entered a decree of divorce. Mother was awarded custody of the children and father was ordered to pay child support in the amount of $50 per month per child. Father did not appeal the decree. *See* Ariz.Rev. Stat.Ann. ("A.R.S.") § 25–325. In 1981, pursuant to the parties' stipulation, the court increased the child support to $200 per month per child beginning in 1983.

In late 1985, mother filed a petition for contempt, alleging that father was in arrears in support payments. The court subsequently found father to be delinquent in his payment of child support, awarded mother judgment for arrearages in the amount of $13,-175, and increased prospective child support to $310 per month for Armando, Jr.

In 1993, mother filed another petition for contempt, alleging father's failure to pay support arrearages. It is this petition that eventually led to the present appeal. At the resulting hearing, father alleged that he was not the father of Armando, Jr., who was then twenty-three years old. Mother denied this allegation. The court then issued a minute entry order, dated June 1, 1993, ordering "that the parties submit themselves to DNA paternity/maternity testing through United Blood Services and that United Blood Services issue a report to the parties and the Court." The court continued the hearing until September 14, 1993, to await the paternity report.

On June 14, 1993, mother filed a notice of appeal from the trial court's order requiring the paternity testing.

### Discussion

### A. Jurisdiction

1. *Appealability of the Trial Court Order*

■ Mother asserts that this court has jurisdiction over the paternity testing order under A.R.S. section 12–2101(C), which allows an appeal "[f]rom any special order made after final judgment." Although father has not challenged our jurisdiction, this court has the duty to inspect its jurisdiction *sua sponte. See Musa v. Adrian,* 130 Ariz. 311, 312, 636 P.2d 89, 90 (1981). The jurisdictional question, which is one of first impression, is whether a paternity testing order, made after the final decree of divorce, is a "special order made after final judgment" that is appealable under A.R.S. section 12–2101(C).

Without discussing the underlying rationale, the Arizona cases applying A.R.S. section 12–2101(C) have simply held that the order in question either was or was not appealable. *See, e.g., John Carollo Engineers v. Sharpe,* 117 Ariz. 413, 416, 573 P.2d 487, 490 (1977) (grant of motion for reconsideration from entry of summary judgment is appealable); *Young Mines Co. v. Blackburn,* 22 Ariz. 199, 202–03, 196 P. 167, 169 (1921) (order reinstating case after being dismissed for lack of prosecution is the same as an order vacating an order of dismissal, and has the same effect as the reversal of a judgment and is appealable); *M & M Auto Storage Pool, Inc. v. Chemical Waste Management, Inc.,* 164 Ariz. 139, 141, 791 P.2d 665, 667 (App.1990) (order denying or granting motion to set aside judgment is appealable); *Gibbons v. Badger Mut. Ins. Co.,* 11 Ariz. App. 485, 489, 466 P.2d 36, 40 (1970) (denial of motion to set aside judgment under Rule 60(c), Arizona Rules of Civil Procedure, is appealable).

Arizona adopted A.R.S. section 12–2101 in part from a California statute, which is now section 904.1 of the California Code of Civil Procedure. *See* A.R.S. § 12–2101 (1994) (Historical and Statutory Notes). The California courts have discussed the rationale behind their statute.

In *Lakin v. Watkins Associated Indus.,* 6 Cal.4th 644, 25 Cal.Rptr.2d 109, 863 P.2d 179 (1993), the California Supreme Court considered whether a post-judgment order denying attorney's fees was appealable under California Code of Civil Procedure section 904.1(b), which allows appeal "[f]rom an order made after a [final] judgment." The court noted that, despite the statute's broad language, not every order following a final judgment is appealable. *Lakin,* 863 P.2d at 183.

■ To be appealable, a post-judgment order must fulfill two requirements. First, the issues raised by the appeal from the order must be different from those that would arise from an appeal from the underlying judgment. *Id.; accord Reidy v. O'Malley Lum-*

*ber Co.,* 92 Ariz. 130, 136, 374 P.2d 882, 886 (1962) (citing *Hilliker v. Board of Trustees,* 91 Cal.App. 521, 267 P. 367 (1928)). This requirement prevents a delayed appeal from the judgment, and also prevents multiple appeals raising the same issues. *Lakin,* 863 P.2d at 183. Applying the first requirement here, we conclude that the appeal from the paternity testing order does not raise any issue that could have been raised in an appeal from the divorce decree itself.

■ The second requirement is that " 'the order must either affect the judgment or relate to it by enforcing it or staying its execution.' " *Id.* (quoting *Olson v. Cory,* 35 Cal.3d 390, 197 Cal.Rptr. 843, 673 P.2d 720 (1983)). "[A] postjudgment order that does 'not affect the judgment or relate to its enforcement [is] not appealable.' " *Id.* (quoting *Olson* ).

■ In the instant case, had the superior court vacated the child support provision of the decree, that would have affected the judgment or its enforcement. But an order that is merely "preparatory" to a later proceeding that might affect the judgment or its enforcement is not appealable. *Id.* at 183–84. The rationale behind this requirement is that allowing appeals from orders that do not substantially affect the rights of the parties vis-à-vis the judgment would lead to innumerable appeals of anything denominated an "order." Moreover, denying the right to appeal a "preparatory" order does not leave the parties without appellate review; it merely postpones the appeal until a more meaningful time. *Id.* at 184.

■ Here, the trial court's paternity testing order has not affected the parties' rights vis-à-vis child support; it is merely preparatory thereto. If the blood tests were to confirm father's paternity of Armando, Jr., the court would presumably leave the support obligation unchanged and there would be no need for an appeal. In addition, there is a question of formal appealability here. Before one can appeal from a post-judgment order, it must be signed by the judge and filed with the court clerk. *State v. Birmingham,* 96 Ariz. 109, 112, 392 P.2d 775, 777 (1964); Ariz.R.Civ.P. 58(a) ("All judgments

shall be in writing and signed by a judge. . . ."); Ariz.R.Civ.P. 54(a) ("judgment" includes appealable orders). Here, the paternity testing order was not signed by the trial court. Accordingly, under normal circumstances, we would merely dismiss this appeal.

### 2. *Special Action Relief*

■ While the subject order may not be reviewed by direct appeal, this court's special action jurisdiction allows us to review interlocutory orders. *Lavit v. Superior Court,* 173 Ariz. 96, 97, 839 P.2d 1141, 1142 (App. 1992) (special action is sole remedy for review of interlocutory order). Although mother did not petition for special action relief in this case, we may look to the substance of a party's motion or writ, rather than the form, and grant special action relief where appropriate. *Brown v. State,* 117 Ariz. 476, 477–78, 573 P.2d 876, 877–78 (1978) (although *pro per* petitioner not entitled to relief under writ of habeas corpus, court treated petition as petition for special action).

■ In this case, mother has proceeded *in propria persona* and therefore is not aware of the appropriate manner in which to bring this matter before us. Moreover, special action relief is appropriate here because the potential harm is the blood testing itself, which cannot be remedied once it has been completed. Therefore, since mother does not have an equally plain, speedy and adequate remedy by appeal, *see* Ariz.R.P.Special Actions 1(a), we *sua sponte* convert her appeal into a petition for special action relief.

### B. Substantive Issue

■ The substantive issue before us is whether father can challenge the paternity of a child more than twenty years after the divorce decree has been entered. Father argues that his claim is not barred because, at the time of the divorce decree, he was not aware of the possibility that Armando, Jr. was not his son.

Although the issue was not raised in the trial court, mother argues on appeal that father cannot challenge the paternity established by the divorce decree because he has

not filed a motion to vacate. *See* Ariz. R.Civ.P. 60(c). Unfortunately, the parties have not provided this court with a complete record of the trial court proceedings, and therefore it is unclear whether father filed a Rule 60(c) motion to vacate prior to the trial court's paternity testing order. Nevertheless, even if father did file a Rule 60(c) motion to vacate, we hold that he is prevented by the doctrine of laches from challenging his paternity of Armando, Jr.

In order to be entitled to relief under the equitable doctrine of laches, mother must show both that father unreasonably delayed asserting his rights and that she was prejudiced by that delay. *See Anonymous Wife v. Anonymous Husband*, 153 Ariz. 573, 577, 739 P.2d 794, 798 (1987) (discussing laches defense to cross-claim for child support reimbursement).

Although we do not know precisely when father first became "suspicious," he acknowledges that he became "convinced" by 1981 that Armando, Jr. was not his. Yet, despite such knowledge, father later that year stipulated to an increase in his child support obligation and did not bring to the court's attention his claim challenging paternity.

Four years later, mother initiated another post-judgment proceeding against father. Although he claims to have discussed the issue of paternity with an attorney at that time, father did not contest mother's petition and thereby allowed both an increase in his child support obligation and a judgment for arrearages to be ordered by the court.

It was not until 1993, twelve years after he admittedly became "convinced" that Armando, Jr. was not his son, that father attempted to challenge paternity. Under these circumstances, where father has waited at least twelve years and has neglected several opportunities to bring his claim to the court's attention, we hold that his delay was unreasonable. *See id.* (ten-year delay in filing paternity claim unreasonable).

Furthermore, the resulting prejudice to mother is obvious. Had father timely asserted his claim, and had blood tests revealed that Armando, Jr. was not his son, mother could have sought support payments from the biological father. *See id.* But because Armando, Jr. has now been emancipated for more than seven years, mother cannot seek support from someone other than father. *See Solomon v. Findley*, 167 Ariz. 409, 412, 808 P.2d 294, 297 (1991). Consequently, father's unreasonable delay in asserting his paternity challenge would prejudice mother's ability to collect child support. Accordingly, father is barred from denying paternity at this time.

## CONCLUSION

Because the threatened harm to mother cannot be adequately remedied by appeal, we accept special action jurisdiction. Because father's unreasonable delay in asserting his claim has prejudiced mother, father's denial of paternity is barred by laches. We therefore grant relief and vacate the trial court's paternity testing order.

LANKFORD, J., and LEVI RAY HAIRE, Judge (Retired), concur.

NOTE: The Honorable LEVI RAY HAIRE, Judge (Retired) was authorized to participate in this appeal by the Chief Justice of the Arizona Supreme Court pursuant to Article 6, section 20 of the Arizona Constitution and A.R.S. section 38–813 (1985).