McRAE, Justice,
dissenting:
¶ 5. “The presumption that a child born in wedlock is the legitimate child of the husband is one of the strongest presumptions known to law ...” Deer v. State Dept, of Public Welfare, 518 So.2d 649, 652 (Miss.1988) (citing Baker ex rel. Williams v. Williams, 503 So.2d 249, 253 (Miss. 1987); Brabham v. Brabham, 483 So.2d 341, 343 (Miss.1986)). In this case such a presumption existed, and since the issue was not raised at the time of the couple’s divorce, the putative father (A.C.W.) is thus estopped from doing so now. There is something very wrong with a decision which allows any father who has ever been suspicious of his former spouse committing adultery to bring a suit years after the divorce in an attempt to be reimbursed for past attorney fees and payments. This is plain error. This decision opens up a Pandora’s Box of problems and contributes to the bastardizing of children. Accordingly, I dissent.
¶ 6. C.E.W. and A.C.W. were married in 1974 and later divorced on October 15, 1992. The child at issue, was born on June 28, 1986, and it was not until November 8, 1996, that any effort was made to determine legally the paternity of the child. In fact, C.E.W. filed a complaint for divorce against A.C.W. on August 7, 1992 and among the allegations of the complaint was a statement that H.W. was “born of this marriage.”
¶ 7. Relief was apparently sought on the basis of Miss.Code Ann. § 93-9-29 (1994). First of all, that statute did not become effective until July 1, 1989, three years after the birth of H.W. Second, this case should have been dismissed for a number of reasons, including a lack of standing, equitable estoppel, res judicata and laches.
¶ 8. At no time was the paternity suit styled in the name of H.W. by and through the presumed father, A.C.W., but instead the relief sought was primarily for A.C.W. The child clearly has no standing to ask what has already been ordered in a divorce proceeding be paid back. As a minor, H.W. is also unable to even bring or maintain a lawsuit.
¶ 9. Equitable estoppel may be applied when it would be substantially unfair to allow a party to deny what he has previously induced another party to believe and take action on. Christian Methodist Episcopal Church v. S & S Constr. Co., Inc., 615 So.2d 568, 571 (Miss.1993). A.C.W. claimed to be the father of H.W. at birth and did nothing to deny this during his subsequent divorce, although he knew differently. The chancellor in the case, A.C.W.’s wife and children, and all attorneys involved relied on the fact that A.C.W. was in fact the father of H.W. and was ordered to pay child support for that very reason. He is therefore estopped from asserting otherwise.
¶ 10. Under res judicata, if four elements are present, a party can be prevented from relitigating all issues tried in a prior lawsuit, as well as all matters which should have been litigated and decided in the prior suit. Dunaway v. W.H. Hopper & Assocs., Inc., 422 So.2d 749, 751 (Miss.1982). These four elements, which must be the same in both suits, were present in this case: 1) the identity of the subject matter of the action, 2) identity of the cause of action, 3) identity of the parties to the cause of action, and 4) identity of the quality or character of a person against whom the claim is made. Id. In the divorce proceeding A.C.W. signed legal documents purporting him to be the natural father of H.W. and failed to raise any issues of paternity. As a result, he should be barred by res judicata from bringing suit to relitigate the same issues against the same parties.
*1030 ¶ 11. Lastly, laches should have been applied, to dismiss this case in its early stages. We addressed the subject of laches in Twin States Realty Co. v. Kilpatrick, 199 Miss. 545, 553, 26 So.2d 356, 358 (1946) stating:
There is no hard and fast rule as to what constitutes laches. If there has been unreasonable delay in asserting claims or if, knowing his rights, a party does not seasonably avail himself of means at hand for their enforcement, but suffers his adversary to incur expense or enter into obligations or otherwise change his position, or in any way by inaction lulls suspicion of his demands to the harm of the other, or if there has been actual or passive acquiescence in the performance of the act complained of, then equity and good conscience to enforce such rights when a defendant has been led to suppose by the word [or silence, or conduct] of the plaintiff that there was no objection to his operations.
(quoting Stewart v. Finkelstone, 206 Mass. 28, 92 N.E. 37, 39 (1910)).
¶ 12. According to the Chancellor’s opinion, which the majority found to be so comprehensive that they adopted it as their own, “Both C.E.W. and A.C.W. knew at the time of the divorce that A.C.W. was not H.W.’s biological father.” In waiting over four years to bring any paternity action, A.C.W. should have been barred by laches and his case dismissed. A.C.W. had a duty to act when divorce proceedings were brought, not four years later.
¶ 13. Other jurisdictions have held that in such a situation a father has a duty to bring a paternity action at the time of divorce. In Arvizu v. Fernandez, 183 Ariz. 224, 902 P.2d 830 (1995), the husband was convinced after the divorce that the child was not his, but delayed ten years in bringing suit. The Arizona Court of Appeals held that his claim of nonpaternity was barred by laches due to his failure to raise the issue in two prior proceedings. While in the case at hand the husband waited four years to bring action, he also knew at the time of the divorce that he was not H.W.’s father but he failed to speak up.
¶ 14. In a similar case, In re Marriage of Boer, 28 Or.App. 347, 559 P.2d 529 (1977), the husband knew that a child born in 1967 during their marriage was not his as at the time of conception he and his wife were separated. Despite this knowledge, he agreed that the child was “of the marriage” and agreed to pay child support when their marriage was dissolved in 1972. Id. at 530. The appellate court affirmed the trial court’s denial of relief stating: “The husband had ample opportunity to contest paternity in the dissolution proceeding and chose otherwise.” Id.
¶ 15. We should hold the same. The majority’s holding flies in the face of public policy and opens up the flood gates for future lawsuits and appeals. Fathers who tire of sending monthly child support checks or paying attorney’s fees may now suspect their ex-wives of cheating and, as a result, clutter up our courts with suits seeking to establish nonpaternity. Accordingly, I dissent.