264 P.3d 870

**In re the Marriage of Laura E. WILLIAMS, Petitioner/Appellee,**

v.

**Lonnie J. WILLIAMS, Jr., Respondent/Appellant.**

**Nos. 1 CA–CV 09–0305, 1 CA–CV 09–0403.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 6, 2011.

Law Office of Scott E. Boehm, P.C. By Scott E. Boehm, Zanon Law Offices By Daniel A. Zanon, Phoenix, Attorneys for Appellee Laura E. Williams.

Lonnie J. Williams, Jr., Phoenix, Appellant in propria persona.

## OPINION

KESSLER, Presiding Judge.

¶ 1 Lonnie J. Williams Jr. ("Father") appeals the superior court's orders modifying his child support and spousal maintenance obligations and ordering him to pay attorneys' fees. For the reasons that follow, we lack jurisdiction to review the order modifying child support and dismiss that portion of the appeal, but we have jurisdiction over the appeal from that portion of the order modifying spousal maintenance. In a separate memorandum decision filed pursuant to Arizona Supreme Court Rule 111(h), we affirm the orders regarding spousal maintenance and attorneys' fees.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Father and Laura E. Williams ("Mother") married in 1986. The superior court dissolved their marriage by decree of dissolution in 2005. The decree provided that the parents would have joint custody of their four children and equal parenting time. The decree also provided that Father would pay $9,500 per month in spousal maintenance for 36 months and $1,000 per month in child support.

¶ 3 The superior court later awarded Mother sole custody with Father's consent.[1] Father acknowledged that child support

---

1. Although no certified copy of the transcript of the hearing regarding changed custody was provided, Mother attached a copy of the transcript as an exhibit to her brief. Father did not object to our consideration of this partial transcript and we exercise our discretion to consider it. *See* ARCAP 3. Like the minute entry, the transcript indicates that Father relinquished custody, understood that the relinquishment would result in a modification of child support, and would attempt to reach settlement on the amount of support by agreement.

would need to be modified and in December 2006, the court entered an order increasing child support from $1,000 to $2,000 per month beginning November 1, 2006.

¶4 Father challenged the order modifying the amount of child support and also filed a petition to modify custody and support. In November 2007, the superior court denied most of Father's motions, but adopted the original decree as to joint custody and set a trial on the issues of custody, parenting time, and child support. In an order entered in March 2008 considering in part another motion to reconsider filed by Father, the court vacated the November 2007 order as to child support and other financial matters and set those issues for trial.[2] The court also held that an exchange of correspondence between the parties did not, by itself, constitute a binding agreement that child support should increase to $2,000 per month.

¶5 Meanwhile in March 2008, Mother filed a petition to modify spousal maintenance. She alleged that she had not become self-sufficient and had been unable to re-establish herself in the job market. The superior court consolidated for trial Mother's petition to modify maintenance, Father's petition to prospectively modify custody and support, and the reconsideration of support for the Disputed Period.

¶6 On January 5, 2009, the superior court entered an order stating the court's factual findings related to a modification of child support and spousal maintenance (the "January 2009 order"). The findings included the income of the two parents, the propriety of various credits and adjustments related to their children, and the son's residence. The court did not set forth an amount Father should pay for child support and did not award specific amounts in arrearages or overpayments from the Disputed Period. However, the court modified spousal maintenance, requiring that Father begin paying Mother $4,750 per month beginning in January 2009 and continuing for 24 months.

¶7 Father filed a timely motion 1) to amend, 2) for a new trial, 3) to alter or amend the judgment, and 4) to correct mistakes of record. The superior court denied Father's motion in a signed order on April 7, 2009 (the "April 2009 order"). Father filed a timely notice of appeal from the January 2009 and April 2009 orders.

¶8 In June 2009, Mother submitted forms of judgment to the superior court for the arrearage of child support both during and outside of the Disputed Period. It included a calculation of the amount of child support due based on the Child Support Guidelines and the superior court's factual findings. It also included additional child support based on an "extraordinary child adjustment." Father objected to the extraordinary child adjustment. In July 2009, the superior court issued an unsigned minute entry declining to apply the extraordinary child adjustment. The superior court issued an unsigned order that Mother submit a new form of judgment not incorporating any adjustment.

¶9 On September 29, 2009, the court entered a Child Support Order dealing with prospective child support, requiring Father to pay Mother $505 per month beginning January 1, 2009. In November 2009, the court entered a signed judgment finally adjusting child support during the Disputed Period. The November 2009 judgment awarded *Father* $5,549.50, based in part on overpayment of child support by Father.[3] These were the first signed orders obligating Father to pay any particular amount of money in connection with child support for the Disputed Period and finally adjusting future child support obligations. Father filed no notice of appeal from either the September 2009 order or the November 2009 judgment.

---

**2.** As we understand the record, the result of the December 2006, November 2007 and March 2008 orders is there was a factual dispute as to child support for at least the period of November 2006 (when Mother was granted sole custody and child support was increased to $2,000 per month) and November 2007 (when the court adopted the original decree as to joint custody).

For purposes of convenience, we refer to this as the "Disputed Period."

**3.** That amount was based on overpayments in child support by Father from November 2006 through May 2009, a credit due to Father for payment of private school tuition and a spousal maintenance arrearage owed to Mother.

## DISCUSSION

### I. This Court lacks jurisdiction over Father's claims related to child support because he did not appeal the September 2009 order or November 2009 judgment.

¶ 10 Father failed to appeal from an appealable order. Father appealed the January 2009 and April 2009 orders, which the superior court issued after the final judgment of divorce. However, those orders did not finally affect ultimate rights; rather, they were merely preparatory to a final adjudication of his rights in the September 2009 and November 2009 orders, which Father did not appeal.[4] Thus, we lack jurisdiction to consider the January and April 2009 orders because Father did not appeal from the September 2009 child support order or the November 2009 judgment.

¶ 11 This Court lacks jurisdiction to consider appeals from non-appealable orders. Ariz.Rev.Stat. ("A.R.S.") § 12–2101 (2003); *Canyon Ambulatory Surgery Ctr. v. SCF Ariz.*, 225 Ariz. 414, 418–19, ¶ 14, 239 P.3d 733, 737–38 (App.2010). "[N]ot every order following a final judgment is appealable." *Arvizu v. Fernandez*, 183 Ariz. 224, 226, 902 P.2d 830, 832 (App.1995). To qualify as appealable, an order entered after final judgment must "dispose[ ] of or settle[ ] ultimate rights." *State v. Birmingham*, 96 Ariz. 109, 111, 392 P.2d 775, 776 (1964). To be appealable under A.R.S. § 12–2101(C), a post-judgment order must 1) raise different issues than would be raised in an appeal from the underlying decree, and 2) the order must affect the judgment or relate to its enforcement. *Arvizu*, 183 Ariz. at 226–27, 902 P.2d at 832–33.

¶ 12 An order does not affect a judgment or relate to its enforcement if it is "merely preparatory" to another order or proceeding that might affect it. *Id.* at 227, 902 P.2d at 833; *see also Birmingham*, 96 Ariz. at 112, 392 P.2d at 777 (stating that "no appeal is allowed" from "those intermediate orders which by their nature do not settle the ultimate rights of the parties"). An order merely entering certain findings of fact for the purpose of directing future proceedings that may eventually create a final judgment is a preparatory order from which an appeal cannot be taken. *Rita J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 512, 515, ¶ 8, 1 P.3d 155, 158 (App.2000) (citations omitted) (holding that orders entered after a permanency hearing determining future course of dependency action are not appealable).

¶ 13 The policy underlying our rule that preparatory orders not affecting the judgment are not appealable is to prevent "innumerable appeals of anything denominated an 'order'." *Arvizu*, 183 Ariz. at 227, 902 P.2d at 833. Prohibiting appeals from these preparatory orders does not impair the right to appeal because an aggrieved party can appeal from the eventual final order affecting ultimate rights. *Id.*

¶ 14 Pursuant to this rule, in *Arvizu* this Court found that it lacked jurisdiction over an order that a putative father and a supported child undergo paternity testing. *Id.* By itself, the testing did not impact the putative father's obligation to pay child support, and if the superior court concluded after testing that the putative father was in fact the biological father of the supported child, no alteration of support would have been necessary. *Id.* By contrast, an order vacating the putative Father's obligation to pay support would have been appealable. *Id.* at 227–28, 902 P.2d at 833–34. The distinction between an appealable special order and a nonappealable preparatory order is whether the order itself, without need for later court action, alters the legal rights or responsibilities of the parties.

¶ 15 Here, Father's contention related to child support clearly raises different issues than an appeal from the underlying decree of divorce. However, the orders that Father appeals do not "either affect the judgment or relate to it by enforcing it or staying its execution." *Arvizu*, 183 Ariz. at 227, 902 P.2d at 833.

---

4. Father filed a second notice of appeal from orders dated April 23, 2009 and May 7, 2009. However, Father does not substantively challenge these orders in his opening brief. Therefore, we decline to consider them.

¶ 16 We lack jurisdiction over Father's claim related to child support arrears from the Disputed Period because the January 2009 order he appealed merely affirmed that some reconsideration of child support was warranted.[5] *See Rita J.*, 196 Ariz. at 515, ¶ 8, 1 P.3d at 158. This order made factual findings related to child support, but did not fix the amount of support or obligate Father to pay any particular amount. *See id.* No order obligating Father to take action or pay money in connection with child support issued until November 2009, from which Father did not appeal.

¶ 17 Similar to the orders in *Arvizu* and *Rita J.*, the January 2009 order left any potential modification of Father's support obligation uncertain. Although the superior court had made findings relevant to determining support pursuant to the Child Support Guidelines, it had discretion to deviate from the Guidelines if it made a written finding that "application of the guidelines would be inappropriate or unjust in a particular case." A.R.S. § 25–320(D) (Supp. 2010).[6] Absent an exercise of that discretion, Father had no obligation to pay any particular amount of support for the Disputed Period. Moreover, the parties were actively litigating whether the superior court should have adjusted the amount of support the Guidelines recommended. The court did not finally determine Father's future child support obligations until the September 2009 Child Support order and did not finally determine adjustments to child support for the disputed period until the November 2009 judgment, from which Father did not appeal. Because the superior court could still order nearly any amount of child support based on a discretionary decision to deviate from the Guidelines, the January 2009 order is merely preparatory to the September 2009 order and November 2009 judgment.

¶ 18 Father contends that *In re Marriage of Dorman*, 198 Ariz. 298, 9 P.3d 329 (App. 2000), supports a determination that the January 2009 order was appealable. We disagree. *Dorman* determined an order immediately changing child custody was appealable because it completely resolved all the issues in the relevant petition. *Id.* at 301, ¶ 4, 9 P.3d at 332. Father contends that the factual findings in the January 2009 order completely resolved the child support issue. We have already determined that they did not. Further, unlike *Dorman*'s immediate impact on custody, the January 2009 order had no immediate effect on child support. It specified no amount Father was required to pay. It expressed no timeframe for payment. Those issues were not decided until the November 2009 judgment, from which Father did not appeal.

## II. The January 2009 order as to spousal maintenance is appealable.

¶ 19 This Court has jurisdiction over Father's appeal regarding spousal maintenance as a special order entered after final judgment. *See* A.R.S. § 12–2101(C). The portion of the January 2009 order modifying Father's spousal maintenance obligation clearly involved different issues than the decree of dissolution. *See Arvizu*, 183 Ariz. at 226–27, 902 P.2d at 832–33. It also had an immediate effect on the judgment without the need for any further proceeding: Father was immediately compelled to pay $4,750 per month for the next 24 months. *See id.*

¶ 20 According to Mother, because child support was also pending before the court and unresolved, the January 2009 order requiring that Father immediately commence payments of additional spousal maintenance was merely preparatory. We disagree. A post-judgment order is appealable when the order involves an issue distinct from the underlying judgment and immediately affected a party's rights. *Arvizu*, 183 Ariz. at 226–27, 902 P.2d at 832–33; *see also Engel v. Landman*, 221 Ariz. 504, 510, ¶ 19, 212 P.3d 842, 848 (App.2009); *Dorman*, 198 Ariz. at 300,

---

5. The April 2009 order denied Father's omnibus post trial motion related to the January 2009 order. Since the January 2009 order was not appealable as to support, neither was the April 2009 order. *Maria v. Najera*, 222 Ariz. 306, 308, ¶ 10, 214 P.3d 394, 396 (App.2009).

6. We cite the current version of applicable statutes because no revisions material to this decision have since occurred.

¶ 3, 9 P.3d at 331. The parties fail to cite an Arizona case holding that resolution of all distinct petitions in a post-dissolution proceeding is a prerequisite to jurisdiction under A.R.S. § 12–2101(C). We decline to judicially graft that requirement onto a statute without terms requiring it. *Accord Dorman,* 198 Ariz. at 301, ¶ 4, 9 P.3d at 332 (finding order appealable because it resolved all issues "raised *in the petition*") (emphasis added).

¶ 21 Because our jurisdiction is purely statutory, the plain meaning of the statute conferring jurisdiction controls our analysis. *See Morrison v. Superior Court,* 10 Ariz. App. 601, 607, 461 P.2d 170, 176 (1969); *cf.* A.R.S. § 1–213 (2002) (requiring that we use the ordinary meaning of undefined statutory terms). Several subsections of A.R.S. § 12–2101 confer jurisdiction only from "final" judgments or orders. A.R.S. § 12–2101(B), (E). Section 12–2101(C) makes "any special order made after final judgment" appealable. The statutory use of the word "order" implies that total finality is not required. 1 The Compact Edition of the Oxford English Dictionary 2005 (1971); *accord* Bryan A. Garner, Black's Law Dictionary 1129–30 (8th ed. 2004). The inclusion of a finality requirement in some subsections but not subsection (C) supports our conclusion that total finality, i.e., the resolution of all pending claims for relief presented in all pending petitions, is not required. *See Ezell v. Quon,* 224 Ariz. 532, 541, ¶ 41, 233 P.3d 645, 654 (App.2010) (Gemmill, J., concurring in part, dissenting in part) (applying principle of "expressio unius est exclusio alterius"). We agree with prior cases that have articulated the standard for appealability of post-judgment orders and have correctly declined to graft a requirement of total finality onto A.R.S. § 12–2101(C). *See supra* ¶ 20.

■ ¶ 22 Additionally, we find instructive the Arizona Supreme Court's recent decision *In re Estate of McGathy,* 226 Ariz. 277, 246 P.3d 628 (2010). In *McGathy,* the supreme court analyzed A.R.S. § 12–2101(J), which confers jurisdiction over appeals "[f]rom a judgment, decree or order entered in any formal proceedings under title 14 [probate orders]." *Id.* at 277, ¶ 1, 246 P.3d at 628 (first alteration in original). The court held

that an order completely resolving a particular petition is appealable notwithstanding the fact that the case may be ongoing. *Id.* at 280, ¶ 17, 246 P.3d at 631. The court's reasoning in *McGathy* applies with just as much force to orders resolving post-decree petitions.

■ ¶ 23 Permitting an appeal from an order completely disposing of a particular petition is proper when the petition raises a new claim. In *McGathy,* the supreme court relied on an analogy between a probate petition and a civil complaint to support its conclusion that an order completely resolving a petition is appealable. *Id.* at 279, ¶ 13, 246 P.3d at 630. The court embraced this analogy because a petition in a probate matter commences an action on the issues it raises, the party filing it must provide notice to all interested parties, and the petition generally controls the scope of the action. *Id.* (citations omitted).

¶ 24 A petition for relief from a decree of dissolution is similarly analogous to a complaint. Like a probate petition, a petition for post-decree relief commences a new proceeding. *See* Ariz. R. Fam. L.P. 3(B)(5) ("A petition is ... the initial pleading that commences a post-decree matter."); *see also id.* at 24(A), 91(B)(3) (mandating that party use a petition as an initial pleading to commence actions to modify child support and to modify spousal maintenance). Notice is required when the petition is filed. *Id.* at 91(B)(1).

¶ 25 Finally, the petition controls the scope of the subsequent litigation. For each type of petition for postdecree relief, the petition, like a civil complaint must set forth "a short and plain statement of the claim," which, in the case of a petition for modification of support or maintenance, is "the substantial and continuing change in circumstances supporting a modification." *Compare* Ariz. R. Civ. P. 8(a)(2) *with* Ariz. R. Fam. L.P. 91(B)(1), (2)(a). Like a complaint, a post-decree petition must set forth the relief sought. *Compare* Ariz. R. Civ. P. 8(a)(3) *with* Ariz. R. Fam. L.P. 91(A)(1). When a petition is filed, the type of petition controls what disclosure is required. *See* Ariz. R. Fam. L.P. 91(P). Like a civil complaint or a probate petition, a petition for post-decree

relief commences a new action and sets its scope.

¶ 26 Allowing an appeal from an order resolving a postdecree petition to modify maintenance promotes certainty of legal rights and obligations. *McGathy* rejected a total finality requirement because requiring total finality in unsupervised administration is contrary to efficient judicial administration. "Failure to allow an appeal from such an order [completely resolving a petition] could compel all subsequent proceedings ... to go forward under a cloud of uncertainty." *McGathy*, 226 Ariz. at 280, ¶ 15, 246 P.3d at 631 (quoting *Estate of Christensen v. Christensen*, 655 P.2d 646, 648 (Utah 1982)). The failure to allow immediate appeal from an order resolving a petition inhibits an administrator's ability to distribute property without knowing whether the order will be overturned on appeal.

¶ 27 Similarly, in the family law context, failure to allow an appeal from an order immediately compelling Father to begin making additional maintenance payments clouds the proceeding with uncertainty. The delayed appeal would increase the number of payments made before either party knows whether the award will be upheld. In a case with sufficient post-decree changes in circumstances, a total finality requirement could prevent an early order modifying some portion of the decree from becoming appealable for an extraordinary period of time. The consequences of such a rule would be particularly egregious if the post-decree order, unappealable because of unrelated pending petitions, deals with the care or custody of a child. We do not think the legislature intended to indefinitely delay such appeals.

¶ 28 Finally, we decline to require total finality in the post-decree context because the Rules of Family Law Procedure

provide adequate protection against excessive appeals. *McGathy* reached a similar conclusion in the probate context based on the superior court's power to consolidate related probate petitions. 226 Ariz. at 280 n. 1, ¶ 17, 246 P.3d at 631 n. 1 (citing Ariz. R. Civ. P. 42(a) and Ariz. R. Prob. P. 3(A)). Like the Rules of Probate Procedure, the Rules of Family Law Procedure allow consolidation of petitions on terms similar to Rule of Civil Procedure 42. *See* Ariz. R. Fam. L.P. 5.[7] If post-decree petitions are filed which are so factually related that they should not be appealed separately, the superior court can consolidate them. *See McGathy*, 226 Ariz. at 280 n. 1, 246 P.3d at 631 n. 1 (citing *In re Estate of Newalla*, 114 N.M. 290, 837 P.2d 1373, 1377 (App.1992) ("When the subject matter of two petitions overlap, it would generally be appropriate to consider both petitions as belonging to the same proceeding.")). By properly consolidating related petitions, the superior court would have the power to protect its own decisional process from premature appeals and save appellate courts the burden of deciding cases piecemeal.

¶ 29 Declining to require total finality under A.R.S. § 12–2101(C) in this context reasonably balances the need to prevent unnecessary appeals with the policy of making appeal available when a litigant's rights are immediately affected.[8] Our holding that we have jurisdiction over the superior court's January 2009 order awarding spousal maintenance is consistent with the plain language of the statute conferring jurisdiction and the principles of statutory interpretation. Our holding also provides an appropriate opportunity for meaningful appellate review.

## CONCLUSION

¶ 30 For the reasons stated above, we dismiss Father's appeal relating to the child

---

7. The consolidated trial in this case does not defeat appellate jurisdiction because the superior court's minute entry specified that it was consolidating the issues "for hearing" rather than for all purposes. *See* Ariz. R. Fam. L.P. 5(B) (consolidation is not for all purposes if the court so specifies). The superior court's express decision to consolidate for the hearing only and not for all purposes supports our conclusion that the support and maintenance issues truly are separate,

and orders disposing of those issues are separately appealable.

8. Additionally, if a single petition requests multiple unrelated forms of relief, the superior court may, in appropriate cases, make a certification of finality that allows immediate appeal while the remainder of the post-decree matter is pending. Ariz. R. Fam. L.P. 78(B); *see also* Ariz. R. Civ. P. 54(b).

support issues, but we have jurisdiction over the appeal as it applies to modification of spousal maintenance. For the reasons stated in our separate memorandum decision, we affirm the order modifying spousal maintenance, affirm the trial court's order awarding Mother attorneys' fees, and will award Mother her attorneys' fees and costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: DANIEL A. BARKER and JON W. THOMPSON, Judges.