NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

UNITED STATES OF AMERICA, *Appellant*,

*v.*

VERDE DITCH COMPANY; SALT RIVER PROJECT AGRICULTURAL
IMPROVEMENT AND POWER DISTRICT and SALT RIVER VALLEY
USERS' ASSOCIATION; ARIZONA DEPARTMENT OF WATER
RESOURCES; MONROE LANE NEIGHBORHOOD COALITION;
YAVAPAI-APACHE NATION; ARIZONA STATE PARKS; PETER J.
MOLLICK; BRADFORD C. GORDON; KAREN PHILLIPS; DON
FERGUSON; LEROY MILLER, *Appellees*.

No. 1 CA-CV 15-0690
FILED 4-13-2017

Appeal from the Superior Court in Yavapai County
No. P1300CV4772
The Honorable David L. Mackey, Judge

**ORDER VACATED**

COUNSEL

United States Department of Justice, Washington, DC
By John L. Smeltzer, F. Patrick Barry
*Counsel for Appellant*

L. Richard Mabery PC, Prescott
By L. Richard Mabery
*Counsel for Appellee VDC*

Salmon Lewis & Weldon PLC, Phoenix
By John B. Weldon, Jr., Mark A. McGinnis, R. Jeffery Heilman
*Counsel for Appellees Salt River*

Arizona Department of Water Resources, Phoenix
By Janet L. Miller, Nicole D. Klobas, Kenneth C. Slowinski
*Counsel for Appellee Arizona Department of Water Resources*

Montgomery & Interpreter PLC, Phoenix
By Robyn L. Interpreter, Susan B. Montgomery
*Counsel for Appellee Yavapai-Apache Nation*

Brown & Brown Law Offices PC, Eagar
By Douglas E. Brown, David Albert Brown
*Counsel for Appellee Monroe Lane Neighborhood Coalition*

Bradford C. Gordon, Camp Verde
*Appellee*

Peter J. Mollick, Phoenix
*Appellee*

---

**MEMORANDUM DECISION**

---

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Kent E. Cattani joined.

---

**K E S S L E R**, Judge:

**¶1**       This case involves post-judgment proceedings filed in relation to a 1909 judgment establishing rules among Verde Ditch shareholders for the operation and maintenance of the Verde Ditch, an approximately eighteen-mile irrigation ditch diverting water from the Verde River. In the 1909 case of *Hance v. Arnold*,[1] an Arizona territorial court issued a judgment determining the proportionate interests of eleven

---

[1]       *Hance v. Arnold et al.*, P-1300-CV-4772 (Yavapai Sup. Ct. Jan. 1, 1907).

2

claimants in the Verde Ditch. This judgment ("1909 Decree") provided that the Verde Ditch would be administered by the "Verde Ditch Company" ("VDC") through court-appointed commissioners.[2]

¶2            Upon a motion by the commissioners, the superior court entered an order authorizing VDC to enter a Memorandum of Understanding ("MOU") that established a process for determining "Historic Water Use" ("HWU") on lands served by the Verde Ditch and for "conform[ing]" the 1909 Decree to Arizona water law to limit diversions of Verde Ditch water to lands that have HWU.

¶3            The United States[3] appeals from that order, arguing the Yavapai Superior Court lacked jurisdiction to adjudicate the water rights of Verde Ditch users and erred in authorizing proceedings that will constitute such an adjudication. We conclude the Yavapai Superior Court lacks jurisdiction to approve such agreements among VDC, its members and/or the Salt River Project Agricultural Improvement and Power District and the Salt River Valley Water Users' Association (collectively, "SRP").[4] These types of agreements are beyond the scope of the 1909 Decree, fall within the exclusive jurisdiction of the Maricopa County Superior Court as part of the General Adjudication of All Rights to Use Water in the Gila River System and Source Gila River Adjudication ("Gila Adjudication"), and could affect the water rights of persons not involved in such negotiations. The approval of any such agreements, as part of an MOU or otherwise, must be done within the context of the Gila Adjudication. Accordingly, we vacate the order.

---

[2]      VDC is an unincorporated association comprised of the successors and assigns of the original parties to *Hance v. Arnold* and other users with rights arising after 1909.

[3]      The United States is a Verde Ditch shareholder because it acquired and owns on behalf of the Yavapai-Apache Nation a parcel of land served by the Verde Ditch in Camp Verde, Arizona.

[4]      The Association is a water users' association formed as an Arizona territorial corporation. The District is an agricultural improvement district formed pursuant to Arizona Revised Statutes, Title 48, Chapter 17. SRP is a shareholder in the Verde Ditch and owns 23.57 shares in VDC.

## FACTUAL AND PROCEDURAL HISTORY

I.       1909 Decree of *Hance v. Arnold*

**¶4**            In 1873, the Old Verde Ditch was constructed to divert waters from the Verde River. The five builders of the Old Verde Ditch were each entitled to one-fifth of the waters from this ditch for irrigation and domestic purposes. In 1891, two of the residents who constructed the Old Verde Ditch, along with one additional resident, constructed the New Verde Ditch with varying interests in the additional capacity. In 1907, the Hances, Verde Ditch property owners, filed a complaint in the Yavapai County Territorial Court alleging that the appropriators upstream of their property along the Verde Ditch were using water in excess of their entitled shares.

**¶5**            In the 1909 Decree, the territorial court determined that some of the parties were "entitled to the use of the waters flowing through [the Verde Ditch]" in a fractional proportion. The 1909 Decree allotted any such rights based on a fractional share of VDC and the same share of water flowing through the Verde Ditch, but not on a specific volume of water to each user or any other water allocation. Specifically, the court held that these fractional shares in the Verde Ditch were "common co-ordinate right[s] equally enjoyed by the several parties, plaintiff and defendants, *without reference to priority of appropriation or use.*" (emphasis supplied). The 1909 Decree provided that all of the parties "should contribute to the expense of the water commissioner including the repair and maintenance of the ditch . . . in proportion to their several interests."

**¶6**            In 1935, the superior court appointed a new commissioner who was "empowered to enforce the provisions of [the 1909 Decree] with reference to the payment of assessments for the maintenance and upkeep of the [Verde Ditch]." The commissioner was also authorized to distribute water under the proportionate shares established in the 1909 Decree. In 1965, the court promulgated rules and regulations for the administration of the Verde Ditch.[5]

---

[5]      The current set of rules and regulations ("1989 Rules") note that the 1909 Decree promulgated broad directives "to govern the operation and maintenance of the Verde Ditch and to insure adequate funding to defray operational costs." The 1989 Rules empower the commissioners to maintain, repair, and operate the Verde Ditch, as well as stop distribution of water to shareholders who are in violation of the 1989 Rules.

**¶7**        Beyond approving rules and regulations for the administration of the Verde Ditch, the superior court has authorized VDC to take a variety of actions necessary to operate the Verde Ditch, including approving drainage modifications, fee schedules, and loans for repairs. The court also regularly approved annual assessments and appointed new VDC commissioners. However, the record does not reflect the court has allocated any rights to water.

## II.        Memorandum of Understanding

**¶8**        In 2014, VDC petitioned the court for authorization to "negotiate and execute a Memorandum of Understanding with [SRP]." The application stated that the purpose of the MOU is to "establish a process and procedure to facilitate the exchange and confirmation of lands served by [VDC]." The MOU's stated function is "to avoid the time and cost of extensive litigation regarding entitlement to Verde River water . . . [through] a comprehensive agreement on the delineation of lands served by the Verde Ditch that have [HWU]." The superior court granted the commissioners' application subject to court approval of the MOU.

**¶9**        The superior court held a series of hearings on objections to the MOU, including an objection by the United States regarding jurisdiction. The superior court found it had jurisdiction to approve the MOU, as it considered the MOU a modification of the 1909 Decree. In 2015, the superior court entered an order ("August 26 Order") authorizing VDC to enter into the MOU. Over the United States' continuing objection, the superior court again found that it had "historic authority dating to before the adoption of the statutes and the general stream adjudication process." According to the court, that authority empowered the superior court to "interpret, adjudicate and enforce water use on the Verde Ditch." The superior court found, pursuant to Arizona Rule of Civil Procedure 54(b), that the order completely "resolve[d] the issue with respect to authorization of [VDC] to enter into the [MOU]."

**¶10**        The United States timely appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(2) (2016).[6] *See infra* Section I.

---

[6]        We cite to the current version of statutes unless changes material to this version have occurred.

**DISCUSSION**

I.      Appellate Jurisdiction

**¶11**          Pursuant to A.R.S. § 12-2101(A)(2), we have jurisdiction over an appeal "[f]rom any special order made after final judgment." "A post-judgment order is appealable when the order involves an issue distinct from the underlying judgment and immediately affect[s] a party's rights." *Williams v. Williams*, 228 Ariz. 160, 165, ¶ 20 (App. 2011) (citations omitted). An order completely disposing of a petition is appealable when the petition raises a new claim. *Id.* at 166, ¶ 23. This order is appealable notwithstanding the fact that the underlying case is still ongoing. *Id.* at ¶ 22 (citation omitted). "Failure to allow an appeal from such an order [completely resolving a petition] could compel all subsequent proceedings . . . to go forward under a cloud of uncertainty." *In re Estate of McGathy*, 226 Ariz. 277, 280, ¶ 15 (2010) (citation and quotation omitted).

**¶12**          VDC requested court authorization for the MOU and to begin negotiations with SRP to determine HWU of landowners on the Verde Ditch. This is an issue distinct from the purpose of the 1909 Decree, which determined each party's share in the Verde Ditch and established court oversight of Verde Ditch administration. Because the court approved VDC's petition and empowered it to move forward under the terms of the MOU, the original petition has been completely addressed. The order is appealable even though any final agreement with landowners through the MOU still requires court approval. The order granting VDC authorization to proceed completely resolves that issue and the appellate court need not wait for the MOU proceedings to be completed to rule on whether the superior court had authority to allow those proceedings. Finally, the United States' rights are immediately affected by the order, as VDC is now able to enter agreements regarding Verde Ditch water rights.[7]

---

[7]      In its answering brief, VDC states it no longer has funding to implement the MOU but that it might enter into agreements with various members of VDC and SRP outside of the MOU. As VDC and SRP explained at oral argument, however, VDC remains interested in negotiating and entering into agreements with VDC members and with persons claiming rights to water in the Verde Ditch, severing and transferring water rights to or from third parties, and having the Yavapai County Superior Court approve such agreements. Thus, the question of the authority of the Yavapai Superior Court to authorize or approve such agreements remains

## II.  Issue and Standard of Review

**¶13**      The United States contends the Yavapai Superior Court did not have jurisdiction to approve the negotiation of water rights through the MOU because the Legislature placed the exclusive power to allocate water rights to the Gila River and all its tributaries in the Maricopa County Superior Court as part of the Gila Adjudication. SRP and VDC claim the MOU is not an adjudication of water rights, and that, even if it were, it is a valid exercise of the Yavapai Superior Court's authority under the 1909 Decree. As SRP and VDC explained at oral argument, the superior court and the parties desired to not only authorize VDC to enter into the MOU and to enter into HWU agreements with VDC shareholders and those claiming rights to the Verde Ditch, but also to approve severance and transfer of rights to water in the Verde Ditch, reconcile such shares after negotiation, resolve disputes among various persons claiming vested water rights to water in the Verde Ditch, and ultimately have the superior court approve any final agreements. All the parties agree that these rights could be resolved as part of the Gila Adjudication and that the parties to this proceeding have filed claims as part of the Gila Adjudication. The United States contends that such rights and allocations must be made as part of the Gila Adjudication while VDC and SRP contend they can also be decided by the Yavapai County Superior Court as part of its continuing jurisdiction over the running of VDC and the Verde Ditch arising from the 1909 Decree.

**¶14**      A specific superior court lacks subject matter jurisdiction to resolve a dispute if the Legislature has vested jurisdiction of such controversy in a different court. "The superior court shall have original jurisdiction of [c]ases and proceedings in which exclusive jurisdiction is not vested by law in another court." Ariz. Const. art. VI, § 14(1); *see* A.R.S. § 45-252(C) (2016) ("The general adjudication shall be brought and maintained in the superior court in the county in which the largest number of potential claimants resides."); *In re Rights to Use of Gila River*, 171 Ariz. 230, 233 (1992) (describing consolidation of stream adjudications in the Maricopa County Superior Court). "Subject matter jurisdiction abates when another county has already assumed jurisdiction in the same matter." *Gabel v. Tatum*, 146 Ariz. 527, 529 (App. 1985) (citation omitted). Thus, the issue presented is one of subject matter jurisdiction, which is a question of law subject to de novo review. *Ader v. Estate of Felger*, 240 Ariz. 32, 43, ¶ 37 (App. 2016)

---

ripe for consideration and review. As the fundamental issue is the ability of the court to authorize and approve agreements affecting rights to waters in the Verde River, the fact that VDC currently does not have resources to participate in the MOU process does not render this appeal moot.

(citation omitted). We review de novo questions of statutory interpretation. *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 178, ¶ 5 (App. 2008) (citations omitted).

III.     Arizona Water Law and the Gila River Adjudication

**¶15**          Prior to 1919, a person could acquire a surface water right simply by applying the water to a beneficial use and posting a notice of the appropriation at the point of diversion. *Summary of Ariz. Water Law & Mgmt.*, Ariz. Water Atlas, Vol. 1, App. C, 123 (2010), http://www.azwater.gov/AzDWR/StatewidePlanning/WaterAtlas/doc uments/appendix_c.pdf.   In 1919, the Legislature adopted the Arizona surface water code ("Water Code"). *Id.* The Water Code requires that a person apply for and obtain a permit from the state to appropriate surface water. *Id.*; *see* 1919 Ariz. Sess. Laws, ch. 164, § 5; *Stuart v. Norviel*, 26 Ariz. 493, 498-501 (1924) (describing statute). Today, applicants obtain that permit from the Arizona Department of Water Resources ("ADWR"). *Mission & Goals*, Ariz. Dep't of Water Res., http://www.azwater.gov/AzDWR/PublicInformationOfficer/MissionA ndGoals.htm (last visited Apr. 4, 2017).

**¶16**          In 1979, the Legislature amended the Water Code to provide for general stream adjudications. *See* A.R.S. §§ 45-251 et seq. Under the Water Code's stream adjudication chapter, all persons served with notice must file a "statement of claimant" presenting the particulars of any claimed water right, including the amount of water and location of irrigated lands. A.R.S. § 45-254(A), (C) (2016). Following the filing of such statements, ADWR must investigate the claims and prepare a technical report for the court to consider, along with any evidence presented by claimants or objectors, in a final adjudication. A.R.S. § 45-256 (2016). ADWR also must publish a preliminary technical report for review by claimants, A.R.S. § 45-256(H), at which point claimants may amend their claims, A.R.S. § 45-254(E)(1).

**¶17**          Arizona's general adjudication statute authorizes determination of "the nature, extent and relative priority of the water rights of all persons in the river system and source." A.R.S. § 45-252(A). Any water users whose rights "have not been previously adjudicated under this article" are eligible to petition to have their rights determined by the court. *Id.* "The general adjudication shall be brought and maintained in the superior court in the county in which the largest number of potential claimants resides." A.R.S. § 45-252(C). The Gila Adjudication was thus initiated in Maricopa County, where the vast majority of claimants reside.

Joseph M. Feller, *The Adjudication that Ate Arizona Water Law*, 49 Ariz. L. Rev. 405, 407-08 (2007).

¶18        Conforming with the statutory purpose of a comprehensive adjudication of surface water rights, the historical and statutory notes to the Water Code explain that "[u]nless otherwise specifically provided, this act applies to . . . [a]ll rights to appropriable water initiated or perfected on or before the effective date of this act." 1995 Ariz. Sess. Laws, ch. 9, § 24 (1st Reg. Sess.). Additionally, the Water Code states that

> [n]othing in this chapter shall impair vested rights to the use of water, affect relative priorities to the use of water determined by a judgment or decree of a court, or impair the right to acquire property by the exercise of the right of eminent domain when conferred by law. . . . [However,] the rights shall be adjudicated as provided in this chapter.

A.R.S. § 45-171 (2016). The chapter includes the general adjudication statutes. *See* A.R.S. §§ 45-251 et seq.

¶19        The Gila Adjudication was first filed by SRP in 1974 as an administrative adjudication of the Upper Salt River. *See In re Rights to Use of Gila River*, 171 Ariz. at 232. The case was consolidated with other proceedings on the Gila River system and became the overall judicial adjudication of the Gila River system and source after the Water Code was modified to include the general adjudication statutes in 1979. *See id.*; A.R.S. § 45-252. The Gila Adjudication includes the Salt, Gila, San Pedro, and Verde River watersheds, which include most of southeastern and central Arizona. *Summary of Ariz. Water Law & Mgmt.*, at 123. SRP, VDC, the Yavapai-Apache Nation, the United States, and other individuals and organizations have filed various statements of claimant in the Gila Adjudication wherein they claim the right to receive water from the Verde River through the Verde Ditch. It is undisputed that the water flowing through the Verde Ditch is part of the Gila Adjudication.

IV.    Exclusive Jurisdiction of the Gila Adjudication Court

¶20        The parties dispute whether the order authorizing the MOU and related negotiations and possible agreements to HWU allocation outside the MOU is subject to the exclusive jurisdiction of the Gila Adjudication in Maricopa County. We have held that disputes over water rights in areas encompassed within the Gila River system and source may not be litigated outside the Gila Adjudication in the Maricopa County Superior Court. *Gabel*, 146 Ariz. at 529. Under the reasoning and holding in

*Gabel*, the Yavapai Superior Court lacks jurisdiction to issue the order permitting allocation of water rights to the Verde River through the Verde Ditch.

**¶21**          In *Gabel*, property owners brought a declaratory judgment action in Gila County Superior Court for a declaration of rights with respect to a ditch and waters diverted through that ditch from Tonto Creek to lands owned by dozens of property holders. *Id.* at 528. The complaint, brought pursuant to A.R.S. §§ 12-1831 et seq., the Uniform Declaratory Judgments Act, sought a legal declaration of rights in regards to the ditch and waters of Tonto Creek. *Id.* We held the Gila County Superior Court did not have jurisdiction of the case because of A.R.S. § 45-252, which provides for a general water rights adjudication when the nature, extent, and priority of water rights are involved. *Id.* at 529. The court observed that while the Gila Adjudication was not the same action as the case at issue, it was "inclusive of all issues raised in appellants' complaint." *Id.* Finally, the court found that dubbing the ditch action a declaratory judgment was semantics, not the public policy of the state favoring single proceedings for water rights.[8] *Id.*

**¶22**          SRP contends that because *Gabel* did not involve an existing judgment determining the right to use waters from the ditch entered prior to the Gila Adjudication, it is not applicable. Rather, SRP argues the Yavapai Superior Court has retained jurisdiction to enforce and modify the 1909 Decree.

**¶23**          We disagree with SRP and VDC. The 1909 Decree was limited to a determination of the original shareholders' fractional interest in the Verde Ditch and concomitantly, their fractional interest in water in the Verde Ditch at any one time without regard to any quantifiable amount of water. Indeed, the 1909 Decree expressly states that it is not acting to allocate or appropriate any water rights. *See supra*, ¶ 5. In contrast, the MOU or the proposed negotiation of agreements as to Ditch water would

---

[8]          Additionally, we stated that "[w]hile ditch 'maintenance and management' could theoretically be separated from the water rights issue, and thus litigated in a separate action, as a practical matter maintenance duties follow water rights. The larger action, already underway, can efficiently and fairly decide the problem of duties correlative with rights." *Gabel*, 146 Ariz. at 529. However, the court held it did not intend to "foreclose the adjudication in Gila County of traditional property disputes, e.g. trespass or easement rights." *Id.*

determine rights based on historic water usage, place of appropriation, and date of usage. This is far beyond the terms of the 1909 Decree.

**¶24** As such, SRP's reliance on *St. Johns Irrigation & Ditch Co. v. Arizona Water Commission*, 127 Ariz. 350 (App. 1980), is misplaced. *St. Johns* held that ADWR did not have authority to issue new water permits when the water at issue had been fully appropriated by court decree, citing A.R.S. §§ 45-143(A), 45-171, and 45-231(B). *Id.* at 352-53. However, A.R.S. § 45-231(B), which the court found to be "particularly significant in that it required [ADWR] to 'accept the determination' of rights to the use of water as determined by 'judgment or decree of a court,'" was repealed in 1979 and replaced by the general adjudication statute, A.R.S. § 45-252. *Id.* at 352; 1979 Ariz. Sess. Laws, ch. 139, § 38, eff. Apr. 24, 1979.

**¶25** *Gabel* is the relevant precedent, as the stream adjudication statute indicates that "the purpose of the adjudications is to quantify, prioritize, and document by decree existing priority rights to appropriable and federally reserved water." *San Carlos Apache Tribe v. Superior Court ex rel. County of Maricopa*, 193 Ariz. 195, 205, ¶ 15 (1999). The Gila Adjudication is inclusive of the HWU addressed by the MOU. *See Gabel*, 146 Ariz. at 529. In contrast, *St. Johns* applies to ADWR and its ability to authorize new permits when the water source is fully appropriated. "The director [of ADWR] has general control and supervision of surface water, its appropriation and distribution, . . . *except distribution of water* reserved to special officers appointed by courts under existing judgments or decrees." A.R.S. § 45-103(B) (2016) (emphasis added). The statute limits court appointed officers, such as VDC, to the distribution of water, while ADWR has the authority to issue new permits when water is available for appropriation.

**¶26** The 1909 Decree gave VDC the authority to manage and maintain the Verde Ditch and to distribute the waters pursuant to a percentage interest in the Verde Ditch, not based on any HWU or quantifiable amount of water flowing through the ditch. That right to administer the Verde Ditch is protected against the authority of ADWR to administer it. However, the 1909 Decree did not retain jurisdiction in the Yavapai Superior Court to adjudicate water rights. Even if it had, that authority would have ended with the general adjudication statutes and the Gila Adjudication.

**¶27** The general adjudication statute authorizes determination of "the nature, extent and relative priority of the water rights of all persons in the river system and source." A.R.S. § 45-252(A). Any water users whose

rights "have not been previously adjudicated *under this article*" are eligible to petition to have their rights determined by the court. *Id.* (emphasis added). In other words, only those water users who have had their water rights determined in a general adjudication are unable to bring further claims, and those whose rights were determined by other courts may still litigate their claims. Furthermore, water users must litigate their rights in a general adjudication, as the act applies to "[a]ll rights to appropriable water initiated or perfected on or before the effective date of this act." 1995 Ariz. Sess. Laws, ch. 9, § 24 (1st Reg. Sess.) (historical and statutory notes). Additionally, although the Water Code protects vested rights, it also states that those "rights shall be adjudicated as provided in this chapter." A.R.S. § 45-171. It is clear that the Legislature intended for general adjudications to be the single determiners of water rights.

¶28            Although both SRP and VDC argue that the MOU is only a process document and not a determination of rights, the function of the MOU is to adjudicate water rights in the Verde Ditch. The MOU's stated purpose is "to avoid the time and cost of extensive litigation regarding entitlement to Verde River water . . . [through] a comprehensive agreement on the delineation of lands served by the Verde Ditch that have [HWU]." The MOU defines HWU as

> use of the waters of the Verde River System through the Verde Ditch that was (a) commenced on a particular parcel prior to June 12, 1919 or (b) commenced after June 12, 1919 pursuant to a certificate of water right issued by ADWR or other state agency of similar jurisdiction prior to January 1, 2014 or pursuant to a severance and transfer of a pre-1919 right approved under applicable law.

These are water rights. The MOU proceedings are designed to determine which lands along the Verde Ditch have HWU and to limit the delivery of Verde Ditch water to those lands. Although the MOU claims the final agreement "shall not be deemed an adjudication of the water rights for any particular parcel of land that would otherwise be determined in the [Gila] Adjudication," a determination of water rights claims affecting water delivery for a subset of users is an adjudication of water rights regardless of any disclaimer in the MOU.

¶29            Similarly, SRP argues that the only effect of the MOU is to guarantee that SRP will not contest the agreed upon water rights in the Gila Adjudication.  SRP's contention that the MOU merely allows private agreements between Verde Ditch shareholders and SRP cannot stand. On

this issue we are persuaded by the Arizona Supreme Court's reasoning when it found A.R.S. § 45-257(C) (1999) unconstitutional. That statute provided that

> [c]laimants [in the Gila Adjudication] may enter into agreements regarding the attributes, satisfaction or enforcement of their water rights in relation to each other. An agreement shall be binding only among the parties to that agreement. On request of all parties to the agreement, an agreement shall be incorporated by reference into the final judgment or decree without modification. Any modification to an agreement is valid only if agreed to by all parties to the agreement and is binding only among the parties to that agreement.

A.R.S. § 45-257(C). In striking down that portion of the general stream adjudication statute as unconstitutional, the supreme court noted that

> [s]ection 45-257(C) provides that settlement agreements made by claimants must be decreed by the court. The statute does not give the court authority to review the agreement. In an *inter sese* proceeding such as this adjudication, a court cannot be required to incorporate an agreement that may affect the availability of water for other claimants or interfere with senior rights. Because of the scarcity of water, this may be the result even though the statute states that the "agreement shall be binding only among [its] parties."

*San Carlos Apache Tribe*, 193 Ariz. at 213, ¶ 43 (citation omitted).

¶30    Similarly, we reject SRP's and VDU's contention that the MOU purports to bind only VDC (and its members) and SRP in regards to HWU and not any other parties to the Gila Adjudication. Given the statutory evidentiary presumption in favor of prior decrees, *see infra* ¶¶ 32-33, and the fact that the MOU and any later agreements must be approved by the Yavapai Superior Court, we find that allowing the MOU to proceed would implicate the same issues the Arizona Supreme Court identified in A.R.S. § 45-257(C). Moreover, as both SRP and VDC acknowledged at oral argument, as part of this negotiation and agreement process, parties might be severing and transferring water rights that would affect not only the parties to this action but other downstream users. This is a far cry from the 1909 Decree which only determined the various interests of the original

VDC shareholders in whatever water was in the Verde Ditch without regard to quantities of water.

¶31　　　　The 1909 Decree did not determine the rights of Verde Ditch shareholders to Verde River water as against other Verde River appropriators. Rather, the 1909 Decree assumed the existence of such rights and, upon stipulation of the Verde Ditch shareholders, declared rules for the allocation of water between the shareholders based on their proportionate interests in the ditch. The jurisdiction exercised by the Yavapai Superior Court since the 1909 Decree and after the promulgation of the general adjudication statutes in 1979 have nearly entirely dealt with maintenance of the Verde Ditch and "traditional property disputes." *Gabel*, 146 Ariz. at 529; *see supra* ¶¶ 6-7 and n.5.

¶32　　　　The argument that the 1909 Decree gave the Yavapai Superior Court prior exclusive jurisdiction because it predates the Gila Adjudication must fail. The Water Code treats prior decrees[9] primarily as evidence rather than as binding decrees. Although there is a statutory evidentiary presumption in favor of a prior decree, the rights in that decree must still be adjudicated in a general adjudication. "The court shall accept information in an applicable prior decree as prescribed by § 45-257, subsection B, paragraph 1." A.R.S. § 45-261(A)(1) (2016). Section 45-257 states the court shall

> [d]etermine the extent and priority date of and adjudicate any interest in or right to use the water of the river system and source, provided that when rights to the use of water or dates of appropriation have previously been determined in a prior decree of a court, the court shall accept the determination of such rights and dates of appropriation as found in the prior decree unless such rights have been abandoned.

A.R.S. § 45-257(B)(1) (2016); *cf. United States v. Superior Court In & For Maricopa Cty.*, 144 Ariz. 265, 278 (1985) (citations omitted) (finding A.R.S. § 45-257(B)(1) valid as an exercise of the legislative power to enact supplementary provisions to the rules of evidence). Thus, while the 1909

---

[9]　　　A "prior decree" is "any judgment or decree entered by a court of competent jurisdiction that applies to the water right claim or use that is subject to adjudication." A.R.S. § 45-251(5).

Decree and the HWU data collected by SRP and VDC might be used as evidence of water rights, it may only be used in the Gila Adjudication.[10]

**¶33**         Furthermore, because the final agreement under the MOU requires court approval, it would be considered a prior decree. The Gila Adjudication court would therefore be required to grant the agreement the evidentiary presumption in favor of prior decrees. Consequently, even though the MOU states any agreement is only binding between the parties, it will affect the Gila Adjudication. This is an untenable result.

## CONCLUSION

**¶34**         For the reasons stated above, the Yavapai Superior Court lacks subject matter jurisdiction to authorize the MOU proceedings or the negotiation and approval of types of agreements contemplated by that

---

[10]         SRP cites *In re Gen. Adjudication of All Rights to Use Water In Gila River Sys. & Source*, 212 Ariz. 64 (2006) (*Globe Equity*) to support the proposition that the Yavapai County Superior Court has continuing jurisdiction under the 1909 Decree. In *Globe Equity*, the Arizona Supreme Court found that water claims by a tribe in the Gila Adjudication were precluded by a 1935 decree issued by the United States District Court adjudicating the tribe's rights. *Id.* at 66, ¶ 1. The court held, on grounds of claim preclusion, that summary judgment in the Gila Adjudication had correctly been granted against the tribe. *Id.* at 69, ¶ 14. *Globe Equity* is distinguishable on several grounds. First, the 1935 decree expressly granted the parties water rights and specified dates of priority, amounts of water, and points of diversion. *Id.* at 67, ¶ 6. In contrast, the 1909 Decree grants only shares in the Verde Ditch and a percentage of the waters therein, with no reference to priority of appropriation or point of diversion. SRP and VDC cannot rely successfully on *Globe Equity* to expand the authorization and jurisdiction of the Yavapai County Superior Court to include adjudications and appropriations of water when *Hance* did not involve such water allocations. Second, *Globe Equity* does not hold that the claims should have been brought in the District Court under its continuing jurisdiction; rather it holds that summary judgment was properly granted in the Gila Adjudication because of the preclusive effect of the prior decree which actually involved appropriation of water rights before the general stream adjudication statutes were passed. SRP and VDC may submit the 1909 Decree as evidence of purported water rights, but only in the Gila Adjudication, not in the Yavapai Superior Court to have that court expand its jurisdiction to affect the Gila Adjudication.

court, SRP, and VDC. *Supra*, ¶ 13. We therefore vacate the August 26 Order.[11]



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[11]     Given this holding, we need not discuss the other arguments raised by the United States seeking vacation of the August 26 Order.